U.S. COURT OF APPEALS
RECEIVED
Oct 24, 2025
FIFTH CIRCUIT

Case No. 25-10752

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

Conghua Yan,

*Plaintiff - Appellant*

v.

The State of Texas; Leslie Starr Barrows, in Individual Capacity; William Albert Pigg, in Individual Capacity; Lori L. Deangelis, in Individual Capacity and Official Capacity as Associated Judge; Panopyra P.L.L.C., a private company; Fuyan Wang, in Individual Capacity; Jiayin Zheng, in Individual Capacity; Yuanli Tang, in Individual Capacity,

*Defendants - Appellees*

On Appeal from the United States District Court for the Northern District of Texas, Fort Worth Division

No. 4:24-CV-579, The Honorable Reed C. O'Connor, District Judge

## OPENING BRIEF OF APPELLANT

Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
Pro Se Litigant

# CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of *Rule 28.2.*1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1) **Parties**

- Conghua Yan (Plaintiff-Appellant) (hereafter, "Appellant" or "Yan")
- The State of Texas (Defendant-Appellee)
- Leslie Starr Barrows, in individual capacity (Defendant-Appellee)
- William Albert Pigg, in individual capacity (Defendant–Appellee)
- Lori L. Deangelis, in individual and official capacity as Associate Judge (Defendant-Appellee)
- Panopyra P.L.L.C., a private company (Defendant-Appellee)
- Fuyan Wang, in individual capacity (Defendant-Appellee)
- Jiayin Zheng, in individual capacity (Defendant-Appellee)
- Yuanli Tang, in individual capacity (Defendant-Appellee)

2) **Counsel Who Appeared Below**

- **For the State of Texas:** Roy Adams, Assistant Attorney General, Office of the Attorney General of Texas.
- **For Leslie Starr Barrows:** Caroline Marie Cyrier, Harris, Finley & Bogle, P.C.
- **For Lori L. Deangelis:** Katherine Elizabeth Owens, Tarrant County Criminal District Attorney's Office.
- **For Panopyra P.L.L.C.; Fuyan Wang; Yuanli Tang:** Charles Davis Chapman, Law Office of C. Davis Chapman; Cody Martin, Martin Oostdyk PLLC.

*/s/ Conghua Yan*
Conghua Yan, Pro Se Plaintiff

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Conghua Yan respectfully requests that oral argument be heard on this appeal. As demonstrated by the arguments below, this case involves several matters of federal law that are of first impression, and some of those issues are complex.

Table of Contents

CERTIFICATE OF INTERESTED PERSONS ...................................................................... 2

STATEMENT REGARDING ORAL ARGUMENT ............................................................. 3

Table of Contents ........................................................................................................ 4

JURISDICTIONAL STATEMENT ................................................................................... 9

INTRODUCTION .......................................................................................................... 9

ISSUES PRESENTED .................................................................................................... 11

STATEMENT OF THE CASE .......................................................................................... 14

    I.    Nature of the Case and Parties: ...................................................................... 14

    II.    Course of Proceedings: ................................................................................... 14

    III.    Magistrate Judge's Recommendation and the district court's judgment ........... 15

STATEMENT OF THE FACTS ........................................................................................ 16

    I.    Tangible facts (ROA.62 ¶1; ROA.66-69 ¶¶ 14-37) alleged under RICO claim against Wang, Panopyra, Barrows, Tang, and Zheng: ................................................ 16

    II.    Tangible facts (ROA.62-63 ¶¶ 2-4 ; ROA.71-73 ¶¶ 54-65]) alleged under 1983 claim against Barrows, Pigg, DeAngelis and the State: ................................................ 17

SUMMARY OF THE ARGUMENT ................................................................................. 20

ARGUMENT AND AUTHORITIES .................................................................................. 23

    I.    Standard of Review & Rule 12(b)(6) Pleading Standard ....................................... 24

        A.    Liberal construction standard applies to all pro se filings as to do substantial justice. ...................................................................................................................... 25

        B.    All materials subsequently filed are required to be considered as amendments to original complaint in pro se's favor ......................................................................... 26

        C.    The FRCP does not require pro se "to plead the legal theory, facts, or elements underlying his claim ............................................................................................... 26

        D.    This Court has discretion to consider any noncompliant brief ....................... 27

        E.    Leave to Amend (Rule 15). ........................................................................... 27

II.      Article III Standing Exists (Concrete, particularized injuries) ............................... 28

III.    No Abstention: Federal Claims Are Independent of State Proceedings .............. 32

     A.      Controlling framework confirms federal claims are independent of state proceedings .......................................................................................................... 32

     B.    The state court divorce proceeding was not disposed of at the time of dismissal and is not final as of today ..................................................................... 35

IV.    No Duplicative Litigation and No Res Judicata ..................................................... 38

     A.      Different enterprises, actors, predicates, scope, period (no factual duplication) 38

     B.    *Res judicata* elements unmet (no final judgment in 4:23-cv-00758; transactional test not satisfied) ........................................................................................... 39

V.    *Ex parte Young* Applies: Prospective Relief Targets Ongoing Violations ................. 40

VI.    Associate-Judge Status & Referral-Based Jurisdiction Foreclose Blanket Immunity 41

     A.      Associate-judge status and referral-based jurisdiction (*Texas Fam. Code §§ 201.005, 201.007*) ........................................................................................... 41

     B.    Federal judicial immunity is limited to judicial acts within jurisdiction (*ultra vires* analysis required) ..................................................................................... 43

     C.      State-law immunity cannot expand federal common-law immunity .............. 43

VII.    RICO Injury and 2025 Supreme Court Clarifications ........................................... 45

     A.      Community-property loss as cognizable RICO injury ..................................... 45

     B.    Economic losses flowing from personal injury (*Medical Marijuana v. Horn*) ...... 46

     C.      No net-loss requirement for mail/wire fraud (Kousisis) .................................. 46

VIII.    Supplemental Jurisdiction Over State-Law Claims (*28 U.S.C. § 1367*).............. 46

CONCLUSION.................................................................................................................. 47

CERTIFICATE OF SERVICE............................................................................................... 49

CERTIFICATE OF COMPLIANCE ...................................................................................... 49

APPELLANT'S APPENDIX ................................................................................................. 50

**Cases**

*Akin v. La. Nat'l Bank of Baton Rouge*, 322 F.2d 749 (5th Cir. 1963)................................44

*Alexander v. Rosen*, 804 F.3d 1203 (6th Cir. 2015)................................33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................24

*Axon Enter., Inc. v. FTC*, 143 S. Ct. 890 (2023)................................44

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................24

*Bice v. Louisiana Public Defender Board*, 677 F.3d 712 (5th Cir. **2012**) ................................37

*Black v. N. Panola Sch. Dist.*, 461 F.3d 584 (5th Cir. 2006) ................................25

*Blankenship v. Buenger*, No. 15-50974 (5th Cir. Jun. 28, 2016)................................24

*Borowski v. Kean Univ.*, 68 F.4th 844 (3d Cir. 2023)................................37

*Bridge v. Phoenix Bond*, 553 U.S. 639 (2008)................................45

*Bye v. MGM Resorts Int'l*, 49 F.4th 918 (5th Cir. 2022) ................................26

*Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ................................47

*Connecticut v. Doehr*, 501 U.S. 1, 19 (1991) ................................30

*Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) ................................37

*Dennis v. Sparks*, 449 U.S. 24 (1980)................................29

*Duffle v. United States*, 600 F.3d 362 (5th Cir. 2010) ................................39

*Erickson v. Pardus*, 551 U.S. 89 (2007)................................25

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) ................................43

*Ex parte Young*, 209 U.S. 123 (1908) ................................41

*Exxon Mobil Corp. v. Saudi Basic*, 544 U.S. 280 (2005)................................32

*Foman v. Davis*, 371 U.S. 178 (1962) ................................28

*Ford v. British Petroleum*, No. 12-965 (E.D. La. Mar. 17, 2014) ................................25

*Fuentes v. Shevin*, 407 U.S. 67 (1972) ................................29

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) ................................43

*Goins v. City of Sansom Park*, No. 4:14-cv-365-O (N.D. Tex. Jun. 29, 2015) ................................25

*Grant v. Cuellar*, 59 F.3d 523 (5th Cir. 1995)................................27

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002)..28

*Green v. Mansour*, 474 U.S. 64 (1985) ................................41

*Hart v. Bayer Corp.*, 199 F.3d 239 (5th Cir. 2000) ................................28

*Holmes v. SIPC*, 503 U.S. 258 (1992) ................................45

*Houston v. Venneta Queen*, 606 F. App'x 725 (5th Cir. 2015) ................................33

*Howard v. King*, 707 F.2d 215 (5th Cir. 1983)................................26

*Hulsey v. Cisa*, 947 F.3d 246 (4th Cir. 2020) ................................33

*Jones v. Johnson*, 134 F.3d 309 (5th Cir. 1998)................................42

*Kousisis v. United States*, 145 S. Ct. 1382 (2025) ................................46

*Lance v. Dennis*, 546 U.S. 459 (2006) (per curiam)................................32

*Lawrence v. McCarthy*, 344 F.3d 467 (5th Cir. 2003) ........................................................ 37

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ........................................................ 29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................ 28

*Marlett v. Heath*, No. 3:18-cv-2812-M-BN, 2018 WL 5723163 (N.D. Tex. Oct. 23, 2018) . 36

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ........................................................ 31

*McQueen v. City of Cincinnati*, No. 1:20-cv-00864 (S.D. Ohio May 12, 2021) .................. 25

*Medical Marijuana, Inc. v. Horn*, 145 S. Ct. 931 (2025) ........................................................ 46

*Miller v. Dunn*, 35 F.4th 1007 (5th Cir. 2022) ........................................................ 32

*Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam) ........................................................ 43

*Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974) ........................................................ 30

*Moran v. Simpson* (In re Life Partners Holdings, Inc.), No. 21-11231 (5th Cir. Jul. 6, 2022)
........................................................ 25

*Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734 (5th Cir. 1999) ........................................................ 37

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, No. 25A103 (U.S. Aug. 21, 2025) ........... 37

*Neitzke v. Williams*, 490 U.S. 319 (1989) ........................................................ 24

*Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) ........................................................ 33

*Priester v. Lowndes Cnty.*, 354 F.3d 414 (5th Cir. 2004) ........................................................ 24

*Quern v. Jordan*, 440 U.S. 332 (1979) ........................................................ 40

*R.W.T. v. Dalton*, 712 F.2d 1225 (8th Cir. 1983) ........................................................ 44

*Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966 (5th Cir. 1992) ........................................................ 41

*Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991) ........................................................ 44

*Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247 (7th Cir. 1994) .................... 24

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ........................................................ 24

*Seago v. O'Malley*, 91 F.4th 386 (5th Cir. 2024) ........................................................ 9

*Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793 (5th Cir. June 20, 2018) .............. 25

*Skinner v. Switzer*, 562 U.S. 521 (2011) ........................................................ 33

*Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969) ........................................................ 30

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................................ 29

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ........................................................ 37

*Stein v. Stein*, 868 S.W.2d 902 (Tex. App. 1994) ........................................................ 42

*Stripling v. Jordan Prod. Co.*, 234 F.3d 863 (5th Cir. 2000) ........................................................ 28

*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) ........................................................ 44

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021 ........................................................ 29

*Travelers Cas. Ins. Co. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307 (10th Cir. 2024) ......... 37

*Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013) ........................................................ 33

*Tyler v. Hennepin County*, 598 U.S. 631 (2023) ........................................................ 47

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ........................................................ 47

*Wright v. El Paso County Jail*, 642 F.2d 134 (5th Cir. 1981) ................................................. 26

*Zinermon v. Burch*, 494 U.S. 113 (1990) ..................................................................... 32

**Statutes**

*15 U.S.C. § 1673(b)(1)(A)* .................................................................................. 41

*18 U.S.C. § 1343* ..................................................................................... 14, 46

*18 U.S.C. § 1956* ........................................................................................ 14

*18 U.S.C. § 1962* ......................................................................................... 9

*18 U.S.C. § 1964(c)* .................................................................................. 45, 46

*28 U.S.C. § 1367(a)* ..................................................................................... 46

*31 U.S.C. § 5324* ........................................................................................ 14

*42 U.S.C. § 1983* ......................................................................................... 9

*Tex. Fam. Code § 201.001(a)(2)* ......................................................................... 42

*Tex. Fam. Code § 201.005* ............................................................................... 42

*Tex. Fam. Code § 201.007* ............................................................................... 42

*Tex. Fam. Code § 201.017* ............................................................................... 43

*Tex. Gov't Code § 22.221* ............................................................................... 42

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over the district court's final judgment pursuant to *28 U.S.C. § 1291.*[1]

## INTRODUCTION

Appellant sues under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962 (hereinafter "§ 1962"), for money-laundering violations, plus 42 U.S.C. § 1983 ("§ 1983") claims and state claims.

Appellant plausibly alleges Defendant Fuyan Wang (hereafter, "Wang") runs a Dallas–Fort Worth massage business through RICO enterprise Panopyra P.L.L.C. to launder cash and evade taxes. From 2018–2023, Wang allegedly wired funds overseas, structured cash deposits via US banking system, and bought property with >$100,000 cash, all secretly during the marriage, causing financial harm via lost community property.

Three years <u>after</u> the alleged money-laundering scheme started, Appellant filed for divorce in 2021 and pursued discovery. Appellant further plausibly alleged that Dallas–Fort Worth area family-law attorneys and other personals, despite <u>knowing</u>

---

[1] *Seago v. O'Malley*, 91 F.4th 386, 389 (5th Cir. 2024).

of the money-laundering allegations, aided in the concealment by accepting large cash fees payment, failing to disclose them timely to the court, filing affidavits misstating their client's cash or income, and conspiring to abet Wang's scheme and contain the fallout.

Money is fungible. Except for Wang and Panopyra, all other defendants are plausibly alleged to have committed wrongdoing arising after 2021 in furtherance of Wang and Panopyra's money-laundering financial scheme, outside of regulated court proceedings.

This case merits review for nationwide issues: (1) lawyers' misuse of the state court system to launder unreported cash under the guise of adjudication in furtherance of a federal RICO money-laundering scheme; (2) exploitation of legal professional service fees in cash form to bypass other industries' large-amount cash-reporting mechanisms; and (3) ensuring a leveled judicial playground so laymen can expose and redress such conduct against paid counsel. Adjudication of these issues will enforce judicial oversight, prevent the abusive use of court system to abet money-laundering, and protect the integrity of the judicial system.

## ISSUES PRESENTED

This appeal involves five motions to dismiss, two answers, from nice parties under twelve federal claims, nine unreached Texas claims, and one unreached Minnesota claim, creating the following legal issues:

1) Whether the district court erred in dismissing for lack of Article III Standing where the complaint alleges concrete, particularized, and ongoing injuries, bi-weekly wage garnishments, exclusion from the use/possession of the home, loss of community assets, and compelled mortgage expenditures, fairly traceable to defendants' alleged issuance and use of a fraudulent TRO and garnishment, and redressable by damages and prospective relief.

2) Whether the alleged issuance and use of a Prejudgment TRO and Wage Garnishment without prior notice and an opportunity to be heard violated Procedural Due Process (e.g., *Mathews/Sniadach/Doehr*), including whether private co-conspirators who acted jointly with a judicial officer are liable under *§ 1983*.

3) Whether the district court erred in invoking jurisdictional or abstention doctrines, *Rooker–Feldman* or *Younger/Sprint*, where the federal *§ 1983* and RICO claims challenge independent misconduct (fraud/ultra vires acts and money-laundering) rather than seek appellate review of, or interference with, a

state-court judgment; and whether the court's inconsistent findings (both "disposed of" and "ongoing") undermine abstention.

4)   Whether dismissal based on *res judicata* or "duplicative suit" was error where there is no final judgment in the other federal action and the claims here arise from different transactions/occurrences, actors, enterprises, predicates, time periods, and geographic scope.

5)   Whether the Eleventh Amendment bars plaintiff's *§ 1983* claims for **prospective** declaratory/injunctive relief, or whether the action may proceed under *Ex parte Young* against appropriate state officials in their official capacities to halt alleged ongoing violations.

6)   Whether federal absolute judicial immunity applies where the defendant is a state statutory associate judge whose authority is limited by statute and referral, and where the complaint plausibly alleges ultra vires, non-judicial, or jurisdiction-absent acts (e.g., entering a TRO without a filed motion or referral).

7)   Whether the complaint plausibly alleges injury/economic loss to "business or property" and the requisite predicate acts/scheme, including cash-based laundering and material wire-fraud misrepresentations, without any requirement to plead a net pecuniary loss beyond the object-of-the-scheme targeting money or property.

8)     Whether the district court erred by entering (or effectively entering) with prejudice dismissals at the Rule 12 stage without granting leave to amend where any pleading defects were curable.

9)     Whether dismissal of the pendent state-law claims was error; and, if any federal claim is revived, whether those claims should be reinstated or remanded for a proper *§ 1367(c)* analysis with leave to amend.

## STATEMENT OF THE CASE

I.  Nature of the Case and Parties:

1.  This civil action alleges federal RICO and *§ 1983* claims, plus related state-law claims, arising from an alleged money-laundering scheme. Defendants are the State of Texas (hereafter, "the State"), Associate Judge Lori L. DeAngelis (individual and official capacities) (hereafter, "DeAngelis"), private attorneys Leslie Starr Barrows (hereafter, "Barrows") and William A. Pigg (hereafter, "Pigg"), and private parties Panopyra PLLC (hereafter, "Panopyra"), Fuyan Wang (hereafter, "Wang"), Jiayin Zheng (hereafter, "Zheng"), and Yuanli Tang (hereafter, "Tang"). The operative Second Amended Complaint pleads RICO predicates including *18 U.S.C. §§ 1956*, *1343*, and *31 U.S.C. § 5324*, and seeks monetary and prospective relief.

II.  Course of Proceedings:

2.  Yan commenced this suit in the United States District Court for the Northern District of Texas on June 20, 2024. Case No. 4:24-cv-00579.

3.  The State, DeAngelis, Pigg and Barrows sought Rule 12 dismissal. Panopyra, Wang, and Tang answered.

4.  Zheng, proceeding pro se, sought an extension to file response. The district court expressly ordered her to respond "on or before January 16."

5.  The Magistrate issued the Findings, Conclusions, and Recommendation (hereafter, "FCR") on January 16, 2025. Zheng had not filed any response on the same day.

III.  <u>Magistrate Judge's Recommendation and the district court's judgment</u>

6.  The FCR recommend dismiss the claims against DeAngelis for "Absolute Judicial Immunity" and "Lack of Standing."; recommend dismiss the claims against the State for "Sovereign Immunity"; recommend dismiss the claims against the Barrows and Pigg for "*Res Judicata*"; recommend dismiss the claims against the Panopyra, Wang, Zheng, and Tang for "Duplicative", "*Younger* Abstention" and/or no business or property injury.

7.  On March 6, 2025, the district court accepted the FCR, overruled Yan's objections, and entered final judgment. Claims against the State and Judge DeAngelis were dismissed without prejudice; claims against Pigg and Barrows were dismissed with prejudice; claims against Panopyra, Wang, Zheng, and Tang were dismissed without prejudice; state-law claims were dismissed without prejudice.

8.  On April 1, 2025, Yan moved to alter or amend the judgment, and the court denied the motion on June 11, 2025. Yan noticed the appeal the same day.

# STATEMENT OF THE FACTS

I.   Tangible facts (ROA.62 ¶1; ROA.66-69 ¶¶ 14-37) alleged under RICO claim against Wang, Panopyra, Barrows, Tang, and Zheng:

1.    Yan alleged that "Wang … operates Panopyra PLLC," "between 2018 and the present, involving amounts exceeding $100,000 in CASH and more than 30 counts of structuring transactions, under the concealing instructions from attorney Leslie Starr Barrows, and the co-conspirators … within a Dallas, Fort Worth based money laundering network." ROA.62

2.    Yan alleged that "since 2018 to present," Wang "through her business of massage," "obtained more than $100,000 cash income." ROA.66

3.    Yan alleged that "between 2018 and 2021," Wang "transmitted at least $11,700 in CASH to an overseas China account possessed by co-conspirator, Changgui Wang" "using Western Union financial services, without disclosing the true source of the income." ROA.67

4.    Yan alleged that Wang "made false disclosures and used structuring tactics … to avoid detection and financial regulations. Each of her transaction was exactly below $3000, to avoid ID claim requirement of Western Union." ROA.67

5.    Yan alleged the transactions with detailed Western Union transaction control number 3323973310, 6649450578, 4601136731 and 6987537723, dated

between 2019 and 2021, all transaction incurred before the state divorce suit filed in later October, 2021. ROA.67

6. Yan alleged that "between 2018 and 2021," Wang and "including but not limited to … Barrows," "laundered no less than \$10,800 in CASH, using account under attorney's possession," "Barrows and Fuyan Wang intentionally concealed all of these incurred cash transactions" during state court proceedings. ROA.67

7. Yan alleged that "between 2018 and 2021," Wang and "committed no less than twenty counts of money laundering … and wire fraud … by deposition of CASH into financial account, in an amount no less than \$20,000, under structuring tactics … to avoid detection and financial regulations." ROA.67

8. Yan alleged that Wang committed a \$50,000 CASH laundering transaction in August 2021, no less than \$30,000 CASH laundering between 2021 to 2022 with Barrow, no less than \$3,000 CASH laundering with Jiayin Zheng between 2021 and 2024, no less than \$40,000 laundering CASH with Yuanli Tang between 2021 and 2024. ROA.68-69

II. Tangible facts (ROA.62-63 ¶¶ 2-4 ; ROA.71-73 ¶¶ 54-65]) alleged under 1983 claim against Barrows, Pigg, DeAngelis and the State:

1. Yan alleged that Barrows, Pigg, conspired with DeAngelis under the color of law, on June 21, 2022, entered a fraudulent TRO to court record, where "no such

Motion for TRO was ever filed" and "no controversy was pending to be tried" in the DeAngelis's court on June 21, 2022. Yan alleged that "[t]o conceal the conspiracy, this fraudulent TRO was secretly signed and entered into the docket without being served" to him. He "did not become fully aware of this fraudulent TRO until March 2024." ROA.62

2. Yan alleged that "this fraudulent TRO … meets zero element of minimum Procedural Due Process1 requirements, which are notice, the opportunity to be heard, and a decision by a neutral decision-maker4. There was no notice because no Motion for TRO … was filed. There was no hearing because no Motion for TRO … was filed. There was obviously no neutral decision-maker because no ruling was pronounced in open court and the associate judge [DeAngelis] had no controversy pending in the associate judge's court on that date when she signed the fraudulent TRO." ROA.62-63.

3. Yan alleged that "the fraudulent TRO restrained [his] liberty of living in his own marital home, and subsequently led to the issuance of a writ of garnishment withholding [his] income. ROA.63

4. Yan alleged that the fraudulent TRO and the subsequent writ of garnishment used to withhold his income "violates Procedural Due Process of Fifth and Fourteenth Amendment." ROA.71

5. Yan alleged that the fraudulent TRO and the subsequent writ of garnishment "deprived him of his liberty to "live and work" freely in his own marital home"; "deprived of his liberty to "use [his income] in all lawful ways"; deprived of his liberty to "enjoy [his income]" and to "pursue his livelihood". ROA.72

6. Yan alleged that "due to the repeated garnishment of income every two weeks since June 2022, Plaintiff alleges that there are **ongoing violations of** *42 U.S.C. § 1983* **every two weeks** when his payroll gets withheld." ROA.73

7. Yan alleged that "the direct injury from the Defendant's acts is the loss of his income every month due to the unlawful garnishment, amounting to **$50,000 and ongoing**." ROA.73

8. Yan sough monetary relief from Barrows, Pigg and DeAngelis. ROA.73

9. Yan sough prospective relief from the State ROA.74-75:

- "a preliminary and permanent injunction **enjoining** the State of Texas to implement a process mechanism to ensure that all court documents submitted are fully traceable, without the risk of forgery."
- "a preliminary and permanent injunction **enjoining** the State of Texas from permitting counsel for one party to underwrite the court's rendition into an order."
- "a preliminary and permanent injunction **enjoining** the State of Texas from allowing counsel to submit judge-signed orders in person to the court docket."
- "a preliminary and permanent injunction **enjoining** the State of Texas from conniving to delegate general constitutional jurisdiction to statutory judges within the Texas judicial framework."

- "a preliminary and permanent injunction **enjoining** the State of Texas to implement a process mechanism to ensure that all de novo hearing must be timely and completely heard."
- "a preliminary and permanent injunction **enjoining** the State of Texas to implement a process mechanism that unconstitutional temporary order in the family court is appealable."
- "a preliminary and permanent injunction **enjoining** the State of Texas to identify all litigants whose orders have been secretly signed and rendered by the Tarrant County family court judge in the last ten years. These identified orders were secretly entered into the case docket without the litigant parties' knowledge and, lacking proof of service, must be properly re-served."
- "a preliminary and permanent injunction **enjoining** the State of Texas to identify all litigants who requested a de novo hearing but whose temporary orders were secretly signed and rendered by the Tarrant County family court associate judge in the last ten years. These identified orders must be void, and the litigants must be entitled to a new trial."
- "a **declaratory** judgment **affirming** that taxpayers' funds cannot be knowingly spent to advocate for state actors who blatantly deprive citizens of their constitutional rights, as this creates an uneven playing field against citizens. Alternatively, and additionally, the Court should issue a declaratory judgment **affirming** that equal funds should be diverted to citizens whose constitutional rights were deprived, as this creates a level playing field."

## SUMMARY OF THE ARGUMENT

First, dismissal at the pleadings stage was improper. On de novo review, Rule 12(b)(6) requires accepting well-pleaded facts as true and asking only whether any set of alleged facts could entitle relief. Pro se filings are construed liberally; subsequent filings must be treated as amendments; and a complaint need not plead

legal theories. The FCR's factual misreadings and failure to give liberal construction taint the dismissal.

Second, Article III standing is satisfied. The complaint alleges concrete, particularized injuries, including prejudgment wage garnishment without due process, loss of community assets, loss of use and enjoyment of the home, and related economic harms, recognized by Supreme Court precedent as deprivations of property protected by the Fourteenth Amendment. Recasting these harms as mere "unfavorable state-court outcomes" misapplies standing and smuggles abstention concerns into jurisdiction.

Third, abstention does not apply. Under *Exxon Mobil*, *Lance*, *Skinner*, and this Court's *Truong*, federal claims that seek redress for independent federal injuries, fraud, due-process violations, racketeering are not barred simply because related events occurred around state proceedings. The FCR's inconsistent labeling of the state case (both "disposed of" and "ongoing") underscores why *Younger* abstention is inapposite.

Fourth, the claims are neither duplicative nor barred by *res judicata*. The RICO counts target distinct enterprises, actors, predicate acts, scopes, and time periods; at

most one individual overlaps in different roles. There is no final judgment in the other case and the transactional test is not met, so claim preclusion fails.

Fifth, prospective relief is available under *Ex parte Young*. The complaint seeks forward-looking injunctions and declarations to halt ongoing or imminent federal-law violations (including recurrent garnishments and docket-manipulation practices). Where prospective relief addresses continuing violations, the Supremacy Clause overrides Eleventh Amendment objections.

Sixth, blanket judicial immunity is unavailable on this record. Associate Judge DeAngelis is a limited, referral-based judicial officer under *Texas Family Code §§ 201.005* and *201.007*, not a constitutional district judge. The acts challenged are plausibly ultra vires (e.g., signing a TRO with no pending or referred controversy and without minimum process), and federal judicial immunity protects only judicial acts within jurisdiction. State-law immunities cannot expand federal common-law immunity.

Seventh, the RICO injury allegations are legally cognizable. Community-property losses qualify as injuries to "business or property," and the brief further explains that economic losses flowing from personal injuries remain recoverable under civil RICO and that mail/wire-fraud predicates do not require pleading a net

loss. Taken as true, the complaint alleges concrete economic harm traceable to the pleaded racketeering scheme.

Eighth, because the state-law causes of action are part of the same case or controversy, reversal on the federal claims requires reinstatement of the state-law claims under *28 U.S.C. § 1367(a)*. Even if any federal claim were ultimately found deficient, the state-law dismissals should be vacated and remanded so the district court can apply *§ 1367(c)* and the *Carnegie–Mellon/Gibbs* factors on the record and grant leave to amend.

Because the FCR misapplied Rule 12, misconstrued pro se standards, wrongly invoked abstention and immunity, and prematurely found duplication/preclusion, this Court should reverse and remand for proceedings on the merits.

## ARGUMENT AND AUTHORITIES

The judgment adopts the FCR wholesale. Under liberal construction, especially for a pro se appellant, the Court need not parse distinctions among the FCR, the opinion, and the judgment.

I. Standard of Review & Rule 12(b)(6) Pleading Standard

This Court "review de novo a district court's dismissal under"[2] Rule *12*.

Rule 12(b)(6) "**does not** countenance … dismissals based on a judge's disbelief of a complaint's factual allegations," and a "well-pleaded complaint **may proceed even if** it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989), and *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). And once a claim is adequately stated, a plaintiff "receives the **benefit of imagination**, so long as the hypotheses are consistent with the complaint." *Id.* at 563 (quoting *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994)); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (plausibility standard).

"On a Rule 12(b)(6) motion, dismissal is **disfavored** and **uncommon**; the court accepts all well-pleaded facts as true and construes the complaint in the plaintiff's favor. The question is not whether the plaintiff will ultimately prevail, but whether he is **entitled to present evidence** in support of his claims." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 418–19 (5th Cir. 2004).

---

[2] *Blankenship v. Buenger*, No. 15-50974, 5 (5th Cir. Jun. 28, 2016).

"A complaint states a claim if its factual allegations would entitle the plaintiff to relief on **any viable legal theory**; **correct labeling** of the legal theory **is not** required." *Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793, at 13 n.7 (5th Cir. June 20, 2018).

"This Court may consider an issue raised for the first time on appeal when it is **purely legal** and refusal to consider it would result in a **manifest miscarriage of justice**." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 593 (5th Cir. 2006).

A. Liberal construction standard applies to all pro se filings as to do substantial justice.

All pro se filings must be liberally construed, see *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing Fed. R. Civ. P. 8(e) (now 8(f)) ("All pleadings shall be so construed as to do substantial justice.")); see also *Ford v. British Petroleum*, No. 12-965, slip op. at 10 n.62 (E.D. La. Mar. 17, 2014) (quoting Erickson ("A document filed pro se is to be liberally construed.")); *Goins v. City of Sansom Park*, No. 4:14-cv-365-O, slip op. at 3 (N.D. Tex. Jun. 29, 2015) (ambiguity "must be viewed in the pro se plaintiff's favor"); *Moran v. Simpson* (In re Life Partners Holdings, Inc.), No. 21-11231, slip op. at 5 n.11 (5th Cir. Jul. 6, 2022) (*Erickson* (holding that the argument of a petitioner appearing pro se will be construed liberally)); *McQueen v. City of Cincinnati*, No. 1:20-cv-00864, slip op. at 2 (S.D. Ohio May 12, 2021).

B. All materials subsequently filed are required to be considered as amendments to original complaint in pro se's favor

"Due to the liberal consideration accorded pro se pleadings, … we consider this "Motion" an amendment to … original complaint."[3] And "under the less stringent standards applicable to pro se litigants. … Most importantly, however, the court was required to look beyond the … formal complaint and to consider as amendments to the complaint those materials subsequently filed. … to consider the … motion, memorandum in support, and affidavit, as amendments to the complaint. These documents embellished the original complaint's averments, and each should have been considered."[4]

C. The FRCP does not require pro se "to plead the legal theory, facts, or elements underlying his claim

"[P]laintiffs need only plead facts—not legal theories,"[5] and ""it is unnecessary to set out a legal theory for the plaintiff's claim for relief."[6] ""[C]omplaints plead grievances, not legal theories." … So it didn't matter that a complaint "initially relied only on [some cause of action]"—the plaintiff could still invoke [other cause of action]

---

[3] *Wright v. El Paso County Jail*, 642 F.2d 134, 135 n.1 (5th Cir. 1981).
[4] *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983).
[5] *Bye v. MGM Resorts Int'l*, 49 F.4th 918, 929 (5th Cir. 2022).
[6] *Id.*

"at **later** stages of the suit." ... What's more, the plaintiff "**did not** [even] **need** to **amend** the complaint to do so.""[7]

D. This Court has discretion to consider any noncompliant brief

"a *pro se* appellant's brief despite its technical noncompliance with the Rules of Civil Procedure when it **at least** argued *some* error on the **part** of the district court. ... (considering issue even after criticizing brief for failing to cite to the record for argument...); ... (addressing issue even though the "only reference appellant makes to the district court's dismissal of his lawsuit is to assert that `this action is not time barred'"); ... (considering brief because it "contains an assertion of trial court error"). This Court has discretion to consider a noncompliant brief, and it has allowed *pro se* plaintiffs to proceed when the plaintiff's noncompliance did not prejudice the opposing party."[8]

The FCR erred in its factual findings, thereby rendering the entire dismissal premised on faulty facts upon application of the law.

E. **Leave to Amend (Rule 15).**

Leave to amend shall be freely given when justice so requires," and at the Rule 12 stage plaintiffs are ordinarily afforded at least one opportunity to replead before a

---

[7] *Id.*

[8] *Grant v. Cuellar*, 59 F.3d 523, 524-25 (5th Cir. 1995).

with-prejudice dismissal, absent undue delay, bad faith, repeated failure to cure, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000); see also *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (futility measured under Rule 12(b)(6)). The FCR erred in not giving Yan a meaningful opportunity to file an amendment before rendering Rule 12 dismissal with prejudice. See, e.g., *Great Plains*, 313 F.3d at 329 (district courts often afford plaintiffs at least one chance to cure pleading defects before dismissing with prejudice).

The same Rule 15 principles apply to the pendent state-law claims: the court should have allowed **amendment and retention** of supplemental jurisdiction if any federal claim remains, or at minimum **vacated** the state-law dismissals to permit repleading.

## II. Article III Standing Exists (Concrete, particularized injuries)

Yan satisfies Article III. He alleges concrete, particularized, and ongoing injuries, bi-weekly wage garnishments, exclusion from his home's use/possession, and compelled mortgage expenditures, each fairly traceable to defendants' alleged issuance and use of a fraudulent TRO and garnishment, and redressable by damages and prospective relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992);

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–41 (2016); *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423–26 (2021)*v*. As to private co-conspirators, the complaint alleges joint action with a state judicial officer, which, if plausibly alleged, suffices at the pleading stage to show *§ 1983* "state action" and supports Article III traceability. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931–39 (1982); *Dennis v. Sparks,* 449 U.S. 24, 27–29 (1980).

FCR erred by concluding "that Yan has failed to establish standing for **any of his claims** against Judge DeAngelis," and erred by finding that "Yan argues that the continued garnishment of his wages constitutes an ongoing harm that gives him standing."

It is evident that FCR erred by finding one injury but omitted other facially alleged injuries. *See* ROA.73 ¶ 66; ROA.74 ¶¶67-70. Yan timely objected to this omission, expressly re-cited the *ultra vires* act causing deprivation of liberty to live in own marital home; an interest in continued possession and use of his home and; the garnishment withholding wage. *See* ROA.615 ¶ 41; ROA.616 ¶ 52.

"[I]t is now well settled that a temporary, nonfinal deprivation of property is nonetheless a "deprivation" in the terms of the Fourteenth Amendment." *Fuentes v. Shevin,* 407 U.S. 67, 81, 84-85 (1972). Due process protects substantial rights and applies broadly, including to prejudgment seizures. See *Mitchell v. W.T. Grant Co.,*

[416 U.S. 600, 610 (1974)](#). The prejudgment garnishment of wages is "a specialized type of property… may as a practical matter drive a wage-earning family to the wall." *Id* at 614.

Prejudgment wage garnishment **without** prior notice and an opportunity to be heard violates due process. [*Sniadach v. Family Finance Corp.*, 395 U.S. 337, 340 (1969)](#). ROA.616 ¶¶ 49-52; ROA.617 ¶¶ 53-55.

> "Yan was also compelled to make substantial mortgage payments for a home he cannot enjoy. **Unable to afford** both wage garnishment and mortgage payments, his **personal property suffered irreparable damage**, **accumulated debts**. The Supreme Court also held, the **partial impairments to property rights affect merit due process protection**. Several consequences can be severe, such as the default of a homeowner's mortgage. See [*Connecticut v. Doehr*, 501 U.S. 1, 19 (1991)](#). "**The extent of these harms, moreover, grows with the length of the suit**." *Id* at 22. The Court noted, upon analysis, the deprivation here is a significant one, **for a property owner**, it **can even place** an existing mortgage in **default**. *Id* at 27-28" ROA.617.

FCR erred by concluding that:

> "Yan disagrees with a ruling over his ongoing disputes with his former wife, he can appeal any such ruling in state court. However, he does not have a remedy in federal court directly against a state judge for damages or injunctive relief.";
>
> "his arguments are predicated on the untenable position that he has standing to sue in federal court for unfavorable outcomes in a state court proceeding. Fifth Circuit precedent is clear that he does not." ROA.704.

The FCR's assertion that Yan may "appeal any such ruling in state court" and lacks "standing to sue in federal court for unfavorable outcomes in a state court proceeding" effectively conflates Article III standing with the distinct *Rooker-*

*Feldman* doctrine; Yan alleges independent injuries traceable to defendants' conduct, not appellate review of a state judgment. For further discussion of independence from state judgments, see Section III, *infra*.

It is evident that Yan's complaint alleged harms "as a result of **conspiracy** of" Barrows, Pigg, and" under *§ 1983* ROA.73 ¶ 65; "**betrayed** by his own attorney" Pigg ROA.73 ¶ 64; Barrows, Pigg, and DeAngelis "**colluded** to enter a **fraudulent** temporary restraining order (TRO) with **forged** signature of his" ROA.71 ¶ 54; Barrows, Pigg, and DeAngelis "**colluded** to enter a writ of **garnishment** to his case under the alleged **fraudulent** TRO" ROA.71 ¶ 55; "by entering a **fraudulent** TRO" and "an unlawful writ of income garnishment", Barrows, Pigg, and DeAngelis, "under the color of law and **without due process**, deprived Plaintiff of rights and property." ROA.72 ¶ 56. Yan has substantively claimed harms due to fraud and violation of due process, ostensibly separate from the judgment of possession, see *Houston*, and sought damages for these purportedly independent wrongdoings. *Id*. This is a permissible *§ 1983* claim under *Skinner*, *Truong*, *Houston*, and *Nesses*.

These allegations also state a procedural-due-process claim at the pleading stage under *Mathews v. Eldridge*'s balancing test. See *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (courts balance the private interest, the risk of erroneous deprivation and value of additional safeguards, and the government's interest). Here, prejudgment

garnishment under a TRO without notice, a filed motion, or a referral presents a severe private interest and a high risk of error; minimal safeguards (notice and an opportunity to be heard) have obvious value.

It was both predictable and practicable for the state actors to provide procedural due-process safeguards. Acting under color of state law, Associate Judge DeAngelis had the authority to ensure compliance, and Barrows and Pigg had responsibility to conduct or seek any orders only through the required pre-deprivation process, yet they failed to do so. See ROA.71–73. Under *Zinermon v. Burch*, 494 U.S. 113, 132–39 (1990), when a deprivation is foreseeable and officials with delegated authority can provide pre-deprivation procedures, the failure to provide them states a *§ 1983* procedural due-process claim of deprived of a protected property interest, notwithstanding the availability of post-deprivation remedies.

### III.    No Abstention: Federal Claims Are Independent of State Proceedings

A. Controlling framework confirms federal claims are independent of state proceedings

In *Miller v. Dunn*, 35 F.4th 1007 (5th Cir. 2022), this Court aligned with the Supreme Court's guidance: *Exxon Mobil Corp. v. Saudi Basic*, 544 U.S. 280, 284–93 (2005) (*Rooker–Feldman* is a narrow, jurisdictional doctrine, not preclusion "by another name"); *Lance v. Dennis*, 546 U.S. 459, 463–66 (2006) (per curiam) (nonparty status defeats *Rooker–Feldman*'s application); and *Skinner v. Switzer*, 562

U.S. 521, 530–33 (2011) (independent *§ 1983* claims are not barred merely because they touch state proceedings).

In *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382–85 (5th Cir. 2013), this Court applied *Exxon/Lance/Skinner* and affirmed federal jurisdiction where the federal claim is independent of the state judgment, adopting the reasoning of *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) (allowing "independent claims" to proceed where state proceedings are allegedly corrupted). *Houston v. Venneta Queen*, 606 F. App'x 725, 726–28 (5th Cir. 2015) likewise recognizes that claims "ostensibly separate" from a state judgment, e.g., fraud and due-process violations, may go forward. Persuasive authority is in accord. *Alexander v. Rosen*, 804 F.3d 1203, 1206–07 (6th Cir. 2015) (emphasizing that the domestic-relations setting does not alter the independence of federal claims like racketeering and conspiracy); *Hulsey v. Cisa*, 947 F.3d 246, 250–52 (4th Cir. 2020) (fraud-based RICO and due-process injuries are not caused by the state judgment itself and therefore are not barred).

Under *Truong*, Plaintiff's *§ 1983* claim is independent: the injuries alleged flow from Barrows and Pigg's fraudulent conduct and DeAngelis's ultra vires acts, not from any request to review or overturn a state judgment. Yan's RICO money-laundering claim is even more clearly independent: the injuries alleged flow from Wang and Panopyra's cash-laundering conduct **since 2018**. The FCR plainly errs in

stating that "Yan's claims under … RICO … arise from … Tarrant County divorce litigation" <u>ROA.709</u> and in recommending dismissal of claims against "Panopyra LLC, Fuyan Wang, Jiayin Zheng, and Yuanli Tang" on the theory that they "also arise from Yan's Tarrant County divorce litigation." <u>ROA.709</u>.

Yan argued:

> "22. Yan's complaint, [ECF No. 9 at ¶¶ 23-34], alleges that Defendant Fuyan Wang and Panopyra PLLC engaged in a **pattern of RICO money laundering** under instructions from a Dallas-Fort Worth-based network **since 2018. The divorce suit began in 2021**. It is a facial error to claim that RICO money laundering **acts between 2018 and 2020 arise from a future 2021 action**." <u>ROA.722.</u>

The district court disregarded this argument. Due process requires meaningful notice and a meaningful opportunity to be heard; by disregarding a meritorious point, the district court abused discretion and prejudiced Yan's opportunity to be heard.

A federal RICO claim alleging 2018 money-laundering acts cannot be precluded by a later divorce action initiated in 2021, where neither community-property division nor custody is at issue in this RICO claim. As *Nesses* cautions, there must remain a federal remedy for federally cognizable injuries even when a corrupted state process has produced a judgment.

B. The state court divorce proceeding was not disposed of at the time of dismissal and is not final as of today

No party argued or briefed that the state case was "disposed of" in the lower court proceedings. Lacking any record support, the FCR erred in finding that "[t]he state court **disposed of** that case," and therefore "**there is no potential** for ongoing federal law violations." ROA.702. The FCR further erred in concluding that, in a disposed-of case, the relief sought is *retrospective* rather than *prospective*, and thus that the *Ex parte Young* exception does not apply. But nine pages later, the FCR flip-flopped, stating that "the Court should abstain because all three conditions are met. Continuation of this case would interfere with **ongoing** state court proceedings," ROA.711, thereby applying *Younger* abstention.

The FCR's reasoning is internally inconsistent in a manner of judicial estoppel: it deems the case "disposed of" to reject the *Ex parte Young* exception ROA.702, yet "ongoing" to invoke *Younger* abstention ROA.711, an inconsistency that undermines its abstention analysis.

First of all, as reflected on the state case docket (of which the Court may take judicial notice), **post-judgment proceedings** remain ongoing, with a state court hearing set for Nov. 6, 2025. The district court further erred by disregarding Yan's objection, which expressly argued: "[n]either Yan nor the State has pleaded that the state court disposed of that case, and the State never argued that there is no potential

for ongoing federal law violations." <u>ROA.726.</u> Nevertheless, the potential for ongoing federal law violations remains even in state court's **post-judgment proceedings**.

Second, the FCR misapplied *Younger* by invoking *Sprint* category (3) (orders uniquely in furtherance of state courts' functions) to *§ 1983* claim that seek prospective relief for independent federal injuries and monetary relief against individuals, not reversal of any state order. The *§ 1983* claim alleged Barrows and Pigg's fraudulent acts, and DeAngelis's ultra vires acts in clear absence of jurisdiction, violating procedural due process. <u>ROA.71–73</u>. The state case docket (of which the Court may take judicial notice) also reflects that DeAngelis is not sitting in Yan's state case, and neither Barrows nor Pigg currently appears as active counsel.

Nevertheless, there was no filing indicates DeAngelis, Barrows or Pigg is still involved with Yan's state case, there was no filing indicates Yan's state case's 2024 status as well (pre-judgment, post-judgment, pending appeal or new case opened), Making any assumption that the district court's actions would cause federal court interference with the 'furtherance of state proceedings' is unsupported by any factual or legal basis.

The FCR further erred by invoking the three Middlesex conditions based on a **non-controlling district court decision**, [*Marlett v. Heath*, No. 3:18-cv-2812-M-BN, 2018 WL 5723163, at *2–3 (N.D. Tex. Oct. 23, 2018)](#), which in turn relied on pre-

*Sprint* Fifth Circuit authority, *Bice v. Louisiana Public Defender Board*, 677 F.3d 712, 716 (5th Cir. 2012), that cited *Middlesex* conditions. As *Sprint* clarified in 2013, *Middlesex* involved a proceeding "akin to a criminal proceeding," and its factors are at most "additional" and not controlling outside that quasi-criminal context. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–81 (2013); see *Borowski v. Kean Univ.*, 68 F.4th 844, 849 (3d Cir. 2023); *Travelers Cas. Ins. Co. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024). "Misapplying the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings." *Daves v. Dallas Cnty.*, 64 F.4th 616, 647 (5th Cir. 2023).

Federal courts have a duty to ensure abstention would not be proper and may raise it sua sponte. *Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003); *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 n.1 (5th Cir. 1999). Lower courts remain bound to apply *Sprint* faithfully. See *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, No. 25A103 (U.S. Aug. 21, 2025) ("Lower court judges are never free to defy" "this Court's decisions." Judges "are duty-bound to respect "the hierarchy of the federal court system created by the Constitution and Congress"").

IV.     No Duplicative Litigation and No Res Judicata

A. Different enterprises, actors, predicates, scope, period (no factual duplication)

The FCR erred by finding this district court suit *Yan v. The State of Texas* (4:24-cv-00579) duplicative of *Yan v. The State Bar of Texas* (4:23-cv-00758). The FCR stated that the earlier case "involved the same claims and shared many defendants" and recommended dismissal with prejudice as duplicative. ROA.710.

The Court should be fully aware of another RICO-ERISA suit remanded by this Court on Sept. 28, 2025 (No. 24-10543). Evidence shows that in the RICO-ERISA suit, the enterprise is the State Bar of Texas; the RICO persons are seven members, including DeAngelis, Barrows, and Pigg; the predicate is ERISA embezzlement; statewide scope; decade-long period. ROA.24-10543.1064.

By contrast, in this RICO money-laundering suit (No. 24-10752), the enterprise is Panopyra; the RICO persons are Barrows, Wang, Zheng, and Tang; the predicate is money laundering; the scope is DFW; the period is 2018–2024. ROA.66. The only overlapping individual is Barrows, alleged as a principal in the ERISA case but primarily a concealment conspirator here. These materially distinct enterprises, predicates, scopes, and periods foreclose any "duplicative" finding.

It is evident that the *§ 1983* claim here neither disputes division of community property nor child custody; neither the former spouse nor the minor is named. Yan seeks federal relief solely for injuries caused by a third-party state actor and co-conspirators' alleged fraud incurred on June 21, 2022, harming his liberty and property interests, including conduct collateral to his discovery efforts (e.g., financial restraint followed by pressure to sign a "proposed settlement" limiting disclosure). ROA.667–668.

B. *Res judicata* elements unmet (no final judgment in 4:23-cv-00758; transactional test not satisfied)

The FCR further erred in asserting "*res judicata* bars Yan's § 1983 and RICO claims," ROA.707, disregarding Yan's comparison, ROA.531, and arguments at ROA.530. The Fifth Circuit's four-part test requires, among other elements, a **final** judgment on the merits. See *Duffle v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). **This Court ruled Sept. 29, 2025, that the district court had not rendered a final judgment in Case No. 4:23-cv-00758; the third element is therefore unsatisfied.** The transactional test likewise fails given the different enterprises, predicates, scope, and period. See *Test Masters*, 428 F.3d at 571.

From the *§ 1983* claim perspective, DeAngelis, Barrows, and Pigg are alleged in the RICO-ERISA case to have forged **temporary QDRO orders** to abscond with

ERISA funds; here, they allegedly entered a **concealed TRO** depriving Yan of property and liberty without due process ("To conceal the conspiracy, this fraudulent TRO was secretly signed and entered into the docket without being served to Plaintiff. Plaintiff did not become fully aware of this fraudulent TRO until March 2024." ROA.62). This fraud incurred on June 21, 2022 is an operative factual nucleus exclusively alleged in this underlying case.

Therefore, the district court abused its discretion by applying *res judicata* and recommending dismissal with prejudice of claims against Barrows, Pigg, Panopyra, Wang, Zheng, and Tang as duplicative. ROA.710.

V.   *Ex parte Young* Applies: Prospective Relief Targets Ongoing Violations

In the *§ 1983* claim, Yan sought nine forms of prospective relief against the state actor's official capacity. ROA.74. Reliefs 1–6 are forward-looking policy/process injunctions (safeguards against forgery; prohibitions on improper financial influence; docket-submission controls; limits on unconstitutional delegations; procedures for de novo hearings; and appeal mechanisms). ROA.74–75 ¶¶ 74–79. Relief 7 seeks prospective notice-and-re-service to cure past secret orders consistent with *Quern v. Jordan,* 440 U.S. 332, 333 (1979); relief 8 seeks forward-looking remedial processes addressing past orders; relief 9 concerns future policy on public-fund allocation to ensure fairness. ROA.75–76 ¶¶ 80–82.

Under Texas law, while the divorce suit is one-time, SAPCR proceedings carry continuing jurisdiction until a child turns 18; Yan remains in ongoing proceedings with a hearing set for Nov. 6, 2025. Prospective relief is therefore appropriate to prevent future violations. Additionally, *15 U.S.C. § 1673(b)(1)(A)* requires child-support orders issued through procedures that **afford substantial due process**; each enforcement act pursuant to an unlawfully obtained child support order implicates that federal standard.

*Ex parte Young*, 209 U.S. 123 (1908), permits prospective injunctive/declaratory relief against state officers for ongoing violations. *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). "If [prospective] relief is sought against continuing federal violations, … the Supremacy Clause outweighs the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 77 (1985). The FCR erred in concluding that *Young* is unavailable.

VI.    Associate-Judge Status & Referral-Based Jurisdiction Foreclose Blanket Immunity

   A. Associate-judge status and referral-based jurisdiction (*Texas Fam. Code §§ 201.005*, *201.007*)

   Yan alleged DeAngelis as an associate judge: "Family court's associate judge position is a creature of **statute** which only holds restricted statutory. Note 6 … The Texas Constitution does not vest masters, referees, or associate judges with the

authority to act as judges." ROA.072. "Associate judges were formerly called family law masters…We use the terms interchangeably… an associate judge of the family law court does not have the power to render judgment." *Stein v. Stein*, 868 S.W.2d 902, 904 (Tex. App. 1994).

The FCR found that DeAngelis's conduct "was undertaken pursuant to the jurisdiction of the 325th Judicial District Court" ROA.706, echoing her motion ROA.189, while disregarding Yan's rebuttal ROA.729 distinguishing court **jurisdiction** from a judge's **authority**, and noting no TRO motion was filed nor controversy referred to the associate judge on June 21, 2022 ROA.62. **An associate judge is a distinct judicial actor under Texas law; the associate judge's orders do not become the referring court's orders unless signed by the referring court, and associate-judge authority is referral-based and county-limited.** See *Tex. Fam. Code §§ 201.001(a)(2)*, *201.005*, *201.007*; see also *Tex. Gov't Code § 22.221* (2017 amendment clarifying mandamus reach to associate judges). **Those distinctions matter to any immunity analysis here.**

A federal magistrate's order may be *ultra vires* and void because a magistrate is not an Article III judge. *Jones v. Johnson*, 134 F.3d 309, 310 (5th Cir. 1998). **By analogy, if DeAngelis acted without a filed motion, without referral, and without minimum process, those acts fall outside a referral-based grant of state authority.** The

FCR erred by granting blanket judicial immunity without first deciding whether the challenged acts were judicial and within jurisdiction.

B. Federal judicial immunity is limited to judicial acts within jurisdiction (*ultra vires* analysis required)

Absolute judicial immunity does not extend to (1) nonjudicial acts and (2) judicial acts taken in the clear absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam). Allegations of entering/docketing a TRO with no filed motion, no referral, and without minimum process are plausibly nonjudicial or, at minimum, undertaken in clear absence of jurisdiction for a referral-based associate judge. The FCR erred by applying blanket immunity to DeAngelis without first conducting the required state-law jurisdiction and *ultra vires* analysis.

C. State-law immunity cannot expand federal common-law immunity

The FCR erred in citing *Tex. Fam. Code § 201.017* as a federal basis to apply judicial immunity. State law cannot expand federal common-law immunity; immunity Texas provides to associate judges under *§ 201.017* is not coextensive with federal common-law judicial immunity. "There is no federal general common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Nor does Congress have power to declare substantive rules of federal common law applicable in a state. *Id.* "When a state statute, … or common-law cause of action conflicts with a federal statute, it is axiomatic that the state law is without effect." *Geier v. Am. Honda Motor Co.*, 529

U.S. 861, 873–74 (2000). "Federal jurisdiction cannot be defeated by a state statute prescribing the court in which the action is to be brought." *Akin v. La. Nat'l Bank of Baton Rouge*, 322 F.2d 749, 754 (5th Cir. 1963). The Supreme Court of Texas has recognized that "a federal cause of action cannot be barred by any state law or policy." *Taylor v. Tolbert*, 644 S.W.3d 637, 656 (Tex. 2022). "Federal courts (except for the Supreme Court) are not superior to state courts, or higher in any theoretical order of precedence. Federal law is supreme and [] supersedes state law no matter what court declares it. Federal law declared by a state court [] is supreme over state law declared by a federal court. It is not the forum that counts, but the law-making authority." *R.W.T. v. Dalton*, 712 F.2d 1225, 1233 (8th Cir. 1983). Courts of appeals review de novo district courts' determinations of state law. *Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991). After *Taylor*, Texas law cannot bar a federal claim; thus no federal district court, or even this Court can declare that *§ 201.017*, or any other state law, defeats a federal claim. The state-law immunity codified in *§ 201.017* is at most a maximum state-law immunity; the FCR erred in treating it as equivalent to federal common-law immunity and skipped statutory jurisdiction analysis, contrary to *Erie*.

The Supreme Court has reaffirmed that constitutional limits on adjudication protect core interests in deprivations or transfers of life, liberty, or property. DeAngelis's associate-judge court is not an Article III court. See *Axon Enter., Inc. v.*

*FTC*, 143 S. Ct. 890, 900–09 (2023). DeAngelis is alleged to have acted *ultra vires* by signing a TRO where the underlying action was neither filed nor properly referred to her, and by colluding with Barrows and Pigg without constitutional jurisdiction or statutory authority. An unconstitutional deprivation of property or liberty does not escape federal review simply because it is orchestrated during state-statutory court proceedings.

VII.     RICO Injury and 2025 Supreme Court Clarifications

Civil RICO confers standing only on a plaintiff "injured in his business or property" by reason of a RICO violation; personal injuries per se are not recoverable, though economic losses to business or property may be. See *18 U.S.C. § 1964(c)*.

A. Community-property loss as cognizable RICO injury

The FCR finds that "Yan claims that … he … lost possession of all community property," ROA.694, due to concealment and transfers of cash assets ROA.69. Under Texas law, spouses own community property during marriage. Liberally construed, Yan alleges economic injury to his property interest in community assets. Yan also pleads proximate cause: the alleged mail/wire fraud and concealment directly deprived him of an economic interest and foreseeably increased compelled expenditures, satisfying "by reason of" causation. See *Holmes v. SIPC*, 503 U.S. 258, 268 (1992); *Bridge v. Phoenix Bond*, 553 U.S. 639, 654–55 (2008).

B.  Economic losses flowing from personal injury (*Medical Marijuana v. Horn*)

The Supreme Court's 2025 decision in [*Medical Marijuana, Inc. v. Horn*, 145 S. Ct. 931 (2025)](#), clarified that while RICO does not allow recovery for personal injury itself, economic losses (e.g., lost employment/wages or other property losses) resulting from a personal injury are recoverable if they constitute *18 U.S.C. § 1964(c)* injury to "business or property." Yan alleged over $100,000 in unnecessary living expenses and additional compelled subsidies ROA.69. Money is fungible, those asserted losses are economic and property-based.

C.  No net-loss requirement for mail/wire fraud (Kousisis)

[*Kousisis v. United States*, 145 S. Ct. 1382 (2025)](#), confirms that mail/wire fraud requires a scheme targeting money or property and material misrepresentation; net loss is not an element. Yan alleges wire-fraud *18 U.S.C. § 1343* predicates. ROA.66–68.

VIII.    Supplemental Jurisdiction Over State-Law Claims (*28 U.S.C. § 1367*)

Under *§ 1367(a)*, the district court had supplemental jurisdiction because the state-law claims form part of the same case or controversy as the federal claims. If this Court revives any federal claim, it should instruct reinstatement of the pendent state-law claims. See *28 U.S.C. § 1367(a).* If, on remand, the court considers declining supplemental jurisdiction, it must do so under and address the *Carnegie–*

*Mellon/Gibbs* factors, economy, convenience, fairness, and comity, on the record, and should permit amendment. See *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The court's wholesale dismissal of all state-law claims following the federal dismissals, without applying *§ 1367(c)* was error; those claims should be reinstated if any federal claim survives, or vacated and remanded for a proper *§1367(c)* analysis with leave to amend.

## CONCLUSION

"At this initial stage of the case, [Yan] need not definitively prove [his] injury or disprove the [Defendants]'s defenses. [he] has plausibly pleaded on the face of [RICO and 1983] complaint that [he] suffered financial harm from the [Defendants]'s action, and that is enough for now." *Tyler v. Hennepin County*, 598 U.S. 631, 570 (2023).

For the reasons set forth above, this Court should reverse the final order and judgment and remand with instructions to reinstate all federal claims and the pendent state-law claims under *28 U.S.C. § 1367(a)*. In the alternative, the Court should vacate the dismissal of the state-law claims and remand for a proper *§1367(c)* analysis applying the Carnegie–Mellon/Gibbs factors, with instructions to grant leave to amend.

At minimum, if any claim is deemed inadequately pleaded, the Court should vacate and remand with instructions to grant leave to amend under Rule 15(a)(2) and this Court's preference for resolving cases on the merits.

Appellant respectfully requests that the Court:

1. **Reverse** the Rule 12(b)(6) dismissal as to the federal claims and **remand** for further proceedings;

2. **Vacate** the abstention ruling and **hold** that Appellant has alleged independent federal claims not barred by *Rooker–Feldman* or *Younger*;

3. **Direct** the district court to **grant leave to amend** under Rule 15 absent futility;

4. **Reinstate** the pendent state-law claims under 28 U.S.C. § 1367(a); or, **alternatively**, if any federal claim does not proceed on remand, **vacate the dismissal of the state-law claims and remand for a proper § 1367(c) analysis** under *Carnegie–Mellon/Gibbs* (with any dismissal to be **without prejudice**); and

5. Grant such other and further relief to which Appellant is justly entitled.

Respectfully submitted,

*/s/ Conghua Yan*
Conghua Yan,
Pro Se Appellant
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com]

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document has been served in a manner in compliance with Rule 25(b) and (c) of the Fed. R. App. P., on October 24, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Conghua Yan*
Conghua Yan
October 24, 2025

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- this brief contains 8,207 words and 748 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type requirements of Fed. R. App. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Office 2016 Word with a 14-point font named Equity.

*/s/ Conghua Yan*
Conghua Yan,
October 24, 2025

## APPELLANT'S APPENDIX

Tab Document

A. Federal Statutes (1-32)

B. State Statutes (33-42)