Case No. 25-10752

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

CONGHUA YAN,

Plaintiff-Appellant,

v.

THE STATE OF TEXAS, et al.,

Defendants-Appellees.

On Appeal from the United States District Court

for the Northern District of Texas, Fort Worth Division

No. 4:24-CV-579

## REPLY BRIEF OF APPELLANT

Conghua Yan

2140 E Southlake Blvd, Suite L-439

Southlake, Texas 76092

214-228-1886

arnold200@gmail.com

Pro Se Appellant

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of *Rule 28.2*.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

### Parties

- Conghua Yan (Plaintiff-Appellant) (hereafter, "Appellant" or "Yan")
- The State of Texas (Defendant-Appellee)
- Leslie Starr Barrows, in individual capacity (Defendant-Appellee)
- William Albert Pigg, in individual capacity (Defendant–Appellee)
- Lori L. Deangelis, in individual and official capacity as Associate Judge (Defendant-Appellee)
- Panopyra P.L.L.C., a private company (Defendant-Appellee)
- Fuyan Wang, in individual capacity (Defendant-Appellee)
- Jiayin Zheng, in individual capacity (Defendant-Appellee)
- Yuanli Tang, in individual capacity (Defendant-Appellee)

### Counsel Who Appeared Below

- **For the State of Texas:** Roy Adams, Assistant Attorney General, Office of the Attorney General of Texas.
- **For Leslie Starr Barrows:** Caroline Marie Cyrier, Harris, Finley & Bogle, P.C.
- **For Lori L. DeAngelis:** Katherine Elizabeth Owens, Tarrant County Criminal District Attorney's Office.
- **For Panopyra P.L.L.C.; Fuyan Wang; Yuanli Tang:** Charles Davis Chapman, Law Office of C. Davis Chapman; Cody Martin, Martin Oostdyk PLLC.

*/s/ Conghua Yan*
Conghua Yan, Pro Se Appellant

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................... 2

TABLE OF CONTENTS ........................................................................................... 3

TABLE OF AUTHORITIES ..................................................................................... 5

INTRODUCTION ..................................................................................................... 6

SUMMARY OF THE ARGUMENT ......................................................................... 7

ARGUMENTS AND AUTHORITIES ...................................................................... 10

   I.   PRELIMINARY STATEMENT ON BRIEFING CONSTRAINTS ............................. 10

   II.   WANG, ZHENG, TANG, AND PANOPYRA WAIVED ALL DEFENSES BY FILING NO BRIEF; THE FCR'S THREE GROUNDS FOR DISMISSAL ARE LEGALLY INDEFENSIBLE ......................................................................................................... 11

      A.   "Duplicative" Finding Rests on Factual Error; *Younger* Abstention and the RICO Injury Are Unrebutted. ......................................................................................... 12

   III.   PIGG'S "MOOTNESS" ARGUMENT MISUNDERSTANDS THE REMAND ORDER AND CONFUSES MOOTNESS WITH CLAIM PRECLUSION ......................... 13

      A.   Claim Preclusion (*Res Judicata*) Is a Waivable Merits Defense Under Rule 8(c)(1) Requires a Final Judgment; This Court Has Already Held None Existed in Lawsuit 1. ...... 14

      B.   Mootness Is Jurisdictional, and Pigg's Theory Misstates Article III. ........................... 14

      C.   Pigg's "Same Claims" Assertion Is Conclusory Under the Transactional Test. ........ 15

      D.   Even on Pigg's Mootness Premise, the Proper Disposition Would Be Vacatur and Dismissal Without Prejudice. ............................................................................... 16

   IV.   PIGG'S ISSUE 2 FAILS FOR THE SAME REASON: NO FINAL JUDGMENT IN LAWSUIT 1, SO CLAIM PRECLUSION CANNOT BAR ANY "COULD-HAVE-BEEN-BROUGHT" THEORIES. ................................................................................................. 17

   V.   BARROWS' DUPLICATION ARGUMENT DEPENDS ON DISPUTED FACTS THAT CANNOT BE RESOLVED ON A MOTION TO DISMISS ...................................... 17

      A.   Barrows Cannot Carry Armadillo's Elements on a Rule 12(b)(6) Record. .................... 18

      B.   Barrows Misrepresents the Record to Manufacture a Non-Existent "Admission." ... 19

   VI.   JUDICIAL NOTICE DOES NOT ESTABLISH THE TRUTH OF BARROWS' FACTUAL ASSERTION. ........................................................................................... 22

   VII.   THE STATE's IMMUNITY ARGUMENT WARRANTS ONLY DISMISSAL WITHOUT PREJUDICE AS TO TEXAS, AND IT DOES NOT SUPPORT WITH-PREJUDICE AFFIRMANCE AS TO ANY OTHER APPELLEE ......................................... 23

VIII.   BAUER/MACHETTA DO NOT BAR STANDING HERE: DEANGELIS ACTED OUTSIDE A PENDING CHAPTER-201 PROCEEDING, CAUSING ONGOING INJURY, AND REULE REQUIRES A ROLE-IN-SCHEME ANALYSIS ........................................... 24

IX.   *TURNER V. RAYNES* IS DISTINGUISHABLE: AN ASSOCIATE JUDGE'S JURISDICTION IS DERIVATIVE, NOT INHERENT, AND ACTING WITHOUT A REFERRAL IS A "CLEAR ABSENCE OF ALL JURISDICTION" ..................................... 29

X.   DEANGELIS'S BRIEF DOES NOT SUPPLY AN ALTERNATIVE BASIS TO AFFIRM ON THE MERITS OR TO FORECLOSE REMAND WITH LEAVE TO AMEND ........... 31

    A.   No waiver: DeAngelis relies on theories not reached as to her, and Appellant properly responds in reply. ............................................................................................................. 32

    B.   Judicial immunity does not justify affirmance, and it does not foreclose remand with leave to amend. ................................................................................................................. 32

    C.   Prospective relief, supplemental jurisdiction, and requested disposition. .................... 33

XI.   NO APPELLEE ADDRESSED THE DENIAL OF LEAVE TO AMEND—A GROUND FOR REVERSAL STANDING ALONE ............................................................. 34

XII.   ALTERNATIVE GROUNDS RAISED BY DeANGELIS AND BARROWS CANNOT SUPPORT DISMISSAL WITH PREJUDICE ...................................................... 35

    A.   Alternative Grounds Were Not Reached Below ........................................................ 36

    B.   Even if Appellees Prevail on Their Alternative Grounds, the Proper Remedy Is Remand with Leave to Amend ............................................................................................ 37

CONCLUSION ................................................................................................................. 38

CERTIFICATE OF SERVICE ......................................................................................... 40

CERTIFICATE OF COMPLIANCE .............................................................................. 40

## TABLE OF AUTHORITIES

**Cases**

*Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623 (5th Cir. 2023) ........................................ 18

*Arnesen v. Raimondo*, 115 F.4th 410 (5th Cir. 2024) ........................................... 11, 38

*Baker v. Bizzle*, 687 S.W.3d 285 (Tex. 2024) ........................................ 22, 25

*Coghlan v. Wellcraft Marine Corporation*, 240 F.3d 449 (5th Cir. 2001) .................................. 38

*Davis v. State*, 956 S.W.2d 555 (Tex. Crim. App. 1997). ............................................... 31

*English v. Crochet*, 154 F. 4th 369 (5th Cir. 2025) ................................................ 12

*Evans v. Garza*, No. 23-50541 (5th Cir. Dec. 9, 2025) ................................................ 28

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................ 34

*Pittman v. Moore,* 980 F.2d 994 (5th Cir. 1993) ................................................ 17

*Reule v. Jackson*, 114 F.4th 360 (5th Cir. 2024)................................................ 25

*Rockett v. Eighmy*, 71 F.4th 665 (8th Cir. 2023) ................................................ 27

*Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991) ................................................ 27

*Smith v. Arizona*, 144 S. Ct. 1785 (2024)........................................................... 11, 37

*Stump v. Sparkman*, 435 U.S. 349 (1978) ................................................ 27, 31

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)................................................ 28

*Turner v. Raynes*, 611 F.2d 92 (5th Cir. 1980)................................................ 29

## <u>INTRODUCTION</u>

1.      This introduction summarizes the appellee briefing posture and identifies the issues addressed (and not addressed) in appellees' response briefs.

2.      Appellant filed his opening brief on October 24, 2025 (Appellant Br.).

3.      Appellee briefs were filed as follows:

- Pigg (Pigg Br., filed November 15, 2025): Argues *mootness* and *res judicata*. Issues not addressed: denial of leave to amend; standing; supplemental jurisdiction; abstention doctrines; RICO injury.

- DeAngelis (DeAngelis Br., filed November 21, 2025): Argues lack of standing, judicial immunity, and supplemental jurisdiction; also urges alternative grounds not reached by the district court. Issues not addressed: denial of leave to amend; abstention doctrines.

- Barrows (Barrows Br., filed November 24, 2025): Argues *duplicative-litigation*/*res judicata* theories and alternative pleading deficiencies. Issues not addressed: denial of leave to amend; the standing analysis; abstention doctrines.

- State of Texas (State Br., filed December 3, 2025): Argues sovereign immunity / Eleventh Amendment and *Ex parte Young*. Issues not addressed: denial of leave to amend; standing; supplemental jurisdiction; duplication; abstention doctrines; RICO injury.

- Wang, Zheng, Tang, and Panopyra: Filed no appellee brief.

4.      Issues not addressed in any appellee brief include: the denial of leave to amend; abstention doctrines; and RICO injury.

## SUMMARY OF THE ARGUMENT

5.      The sole RICO appellees—Wang, Zheng, Tang, and Panopyra—filed no brief, waiving defense of the dismissal. Regardless, the FCR's three grounds for dismissing them are legally indefensible. The "duplicative litigation" finding rests on a factual and doctrinal error: this case alleges a distinct RICO enterprise and distinct predicate acts and injuries from the separate "Yan I" action, and re-litigation doctrines cannot be applied without analyzing the source of the injury. No appellee defended *Younger* abstention or the 'no RICO injury' rationale, and DeAngelis expressly declined to address *Younger*. The Court must reverse and remand as to Wang, Zheng, Tang, and Panopyra.

6.   Pigg's central theory—that a prior jurisdictional dismissal renders the § 1983 claims 'moot'—misstates Article III by conflating a waivable defense (claim preclusion) with a jurisdictional bar (mootness). Preclusion requires a final judgment, yet this Court already held no final judgment existed for Pigg in Lawsuit 1. Pigg defeats his own premise by arguing the case is 'pending on appeal' while conceding the claims 'have not been finally adjudicated.' Nor are the claims moot: relief remains possible because this Court can reverse the dismissal, and ongoing garnishment and property deprivation establish concrete continuing injury. Even accepting Pigg's mootness premise, the mandatory remedy is *vacatur*—not the with-prejudice affirmance he seeks. Finally, his 'same claims' assertion fails for ignoring the Fifth Circuit's transactional test and Appellant's opening brief.

7.   **Barrows' duplication theory fails** at the Rule 12(b)(6) stage because it relies on disputed facts and elements unproven by the pleadings. Judicial notice establishes only the *existence* of filings, not the truth of their contents, and cannot resolve contested privity or "same claim" issues against Appellant. Claim splitting requires strict privity, which mere "parallel interests" or shared counsel cannot satisfy. Barrows further manufactures an "admission" by mischaracterizing the record; the cited passage actually contains Appellant's explicit denial and challenge regarding

the June 21 TRO notice. The Court cannot treat a disputed narrative as fact nor affirm a with-prejudice dismissal on a fact-dependent theory.

8.     Barrows' duplication theory fails at the Rule 12(b)(6) stage because it relies on disputed facts and elements unproven by the pleadings. Judicial notice establishes only the existence of filings, not the truth of their contents, and cannot resolve contested privity or "same claim" issues against Appellant. Claim splitting requires strict privity, which mere "parallel interests" or shared counsel cannot satisfy. Barrows further manufactures an "admission" by mischaracterizing the record; the cited passage actually contains Appellant's explicit denial and challenge regarding the June 21 TRO notice. The Court cannot treat a disputed narrative as fact nor affirm a with-prejudice dismissal on a fact-dependent theory.

9.     Regarding the State, while Appellant accepts sovereign immunity principles, this jurisdictional bar supports only dismissal without prejudice as to Texas—not with-prejudice affirmance for other appellees. Any defect in pleading prospective relief should be cured on remand via Ex parte Young, not by a case-ending disposition.

10.     DeAngelis's standing and immunity defenses fail because Bauer and Machetta create no categorical "no controversy with judges" rule. Under Reule, Article III

turns on the judge's specific role in the statutory scheme. Where Appellant alleges an associate judge acted without Chapter 201 referral predicates, the Court cannot presume an adjudicatory posture and must conduct that role-in-scheme inquiry. Turner is distinguishable as involving a constitutional officer with inherent jurisdiction; conversely, an associate judge's authority is derivative, existing only upon a valid referral. Acting without that predicate constitutes a "clear absence of all jurisdiction," stripping immunity. Regardless, any immunity defense would warrant only dismissal with leave to replead, not affirmance with prejudice.

11.     Finally, reversal is independently warranted because no appellee defends the categorical denial of leave to amend. Given Rule 15's strong presumption favoring amendment—especially for pro se litigants—the district court erred by denying leave without reason where Appellant had no post-service opportunity to cure defects. Because appellees forfeited defense of the Rule 15 ruling, alternative grounds raised on appeal cannot sustain a with-prejudice dismissal. The mandatory disposition is vacatur and remand with instructions to grant leave to amend under Rule 15's liberal standard.

## ARGUMENTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT ON BRIEFING CONSTRAINTS

12.    Appellant faces an unprecedented briefing burden. Four appellees collectively filed approximately 35,000 words raising more than fifteen alternative grounds, most unreached by the district court. Appellant is limited to 6,500 words to respond to all parties—a 6:1 ratio making comprehensive rebuttal impossible.

13.    Accordingly, Appellant prioritizes: (1) grounds the district court actually reached; (2) independently reversible denial of leave to amend; and (3) procedural bars to alternative-ground affirmance.

14.    Appellant respectfully submits that alternative grounds not reached below should be remanded for district court consideration in the first instance, consistent with this Court's admonition to be "a court of review, not first view." *Smith v. Arizona*, 144 S. Ct. 1785, 1801 (2024); *Arnesen v. Raimondo*, 115 F.4th 410, 414 (5th Cir. 2024).

## II. WANG, ZHENG, TANG, AND PANOPYRA WAIVED ALL DEFENSES BY FILING NO BRIEF; THE FCR'S THREE GROUNDS FOR DISMISSAL ARE LEGALLY INDEFENSIBLE

15.    Defendants Wang, Zheng, Tang, and Panopyra filed no appellee brief. The Court should therefore decide the issues as framed by Appellant's briefing and the record. The district court dismissed claims against these four defendants on three

grounds: (1) *duplicative* litigation, (2) *Younger* abstention, and (3) no RICO injury.

ROA.693, 709-712. Each is legally erroneous and cannot survive appellate review.

## A.    "Duplicative" Finding Rests on Factual Error; *Younger* Abstention and the RICO Injury Are Unrebutted.

16.    The district court deemed this "*duplicative*" of *Yan v. State Bar of Texas*, No.

4:23-cv-00758:

> "The only defendants in the pending [money laundering] case that Yan did not name in Judge Pittman's [ERISA fund embezzlement] case are Panopyra LLC, Fuyan Wang, Jiayin Zheng, and Yuanli Tang […] In the pending case, Yan alleges that Wang, Zheng, and Tang violated various RICO statutes by concealing cash transactions through tax evasion, money laundering, and impermissible structuring tactics. […] As discussed above, the common nucleus of operative fact in both cases revolves around the validity of previous Tarrant County family court orders. However, the addition of new defendants [Panopyra LLC, Fuyan Wang, Jiayin Zheng, and Yuanli Tang] or [money laundering] claims does not transform this case into a proper vehicle for the **re-litigation** of [ERISA fund embezzlement] claims previously asserted against any defendants [State Bar of Texas and seven members of State Bar of Texas]. […] Here, the Court should dismiss with prejudice all claims against Barrows, Pigg, Panopyra, Wang, Zheng, and Tang as **duplicative**." (emphasis added) ROA.709-710.

17.    Appellant's Opening Brief detailed the distinct enterprises, predicates,

geographic scopes, and time periods that defeat duplication. (Appellant Br. at 39).

No Appellee disputed these factual distinctions. Under this Court's recent decision

in *English v. Crochet*, 154 F. 4th 369, 373 (5th Cir. 2025), which focuses on the

"source of the injury," these distinct RICO predicates (money laundering vs. ERISA

embezzlement) foreclose a finding of re-litigation.

18.    *Younger* abstention (Appellant Br. at 33–38) and the RICO injury (Appellant

Br. at 46–47) are unrebutted. Not one of the four appellees who filed briefs—the

State, DeAngelis, Barrows, or Pigg—defended the FCR's *Younger* abstention or

RICO injury findings. DeAngelis explicitly declined to address *Younger* abstention.

DeAngelis Br. at 16 n.4. These grounds applied only to the four defendants who filed

no brief: Wang, Zheng, Tang, and Panopyra. Because Wang, Zheng, Tang, and

Panopyra filed no brief, they waived these defenses. This Court should reverse the

dismissal and remand for proceedings on the merits.

## III. PIGG'S "MOOTNESS" ARGUMENT MISUNDERSTANDS THE REMAND ORDER AND CONFUSES MOOTNESS WITH CLAIM PRECLUSION

19.    **Pigg presents an issue:** whether Yan's claims under *42 U.S.C. § 1983* are moot

given this Court's September 29, 2025 jurisdictional disposition in Case No. 24-

10543.

20.    Pigg concluded that because this Court dismissed the appeal for lack of

appellate jurisdiction and remanded in *Yan v. State Bar of Texas*, No. 24-10543,

Yan's *§ 1983* claims here "are now moot." (Pigg Br. at 6.) That is incorrect. Pigg

attempts to convert a merits defense, claim preclusion, into a jurisdictional doctrine,

mootness.

A.    **Claim Preclusion (*Res Judicata*) Is a Waivable Merits Defense Under Rule 8(c)(1) Requires a Final Judgment; This Court Has Already Held None Existed in Lawsuit 1.**

21.    Pigg's preclusion position fails at the threshold because it requires a final judgment. As established in the Opening Brief (at 39) and confirmed by this Court's September 29, 2025 order in Case No. 24-10543, no final judgment exists in Lawsuit 1. Pigg concedes the claims "have not been finally adjudicated" (Pigg Br. at 6), a fatal admission that renders his res judicata defense meritless.

22.    Pigg's reliance on *Fidelity Standard* and *Comer* does not cure the defect. *Fidelity Standard* states that "a case pending appeal is res judicata" "unless and until reversed," but that maxim presupposes a final judgment under review. *Fid. Standard Life Ins. Co. v. First Nat'l Bank & Tr. Co.*, 510 F.2d 272, 273 (5th Cir. 1975) (per curiam). *Comer* applied that same principle only because the district court judgment "never was reversed or otherwise modified"; it did not involve a disposition confirming nonfinality. *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013).

B.    **Mootness Is Jurisdictional, and Pigg's Theory Misstates Article III.**

23.    "Moot questions require no answer." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam). Mootness is jurisdictional because the Court "is not empowered to decide moot questions or abstract propositions." *Id.*

24. A case becomes moot only when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). "The burden of demonstrating mootness is a heavy one." *Id.* The September 29, 2025 disposition in No. 24-10543 left Lawsuit 1 pending in the district court; it did not render this appeal moot.

25. Two related cases can proceed simultaneously without either being moot. A case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (cleaned up). This Court can grant effectual relief by reversing a with-prejudice merits dismissal and restoring Yan's claims. Yan also alleges an ongoing bi-weekly wage garnishment continuing since June 2022, which is a concrete, continuing injury. (ROA.62, ¶1; ROA.73, ¶65.)

26. A mootness question cannot proceed in court; a live controversy that is actively proceeding is not moot. Therefore, it is contradictory to the mootness doctrine to claim mootness based solely on the existence of an active parallel proceeding.

## C. Pigg's "Same Claims" Assertion Is Conclusory Under the Transactional Test.

27.     Even apart from finality and mootness, Pigg's "same claims" assertion is conclusory. The Fifth Circuit applies a transactional approach that asks whether the claims arise from the same "nucleus of operative fact." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Pigg never applies that test, never compares the pleadings, and never ties his conclusion to any record facts.

28.     Pigg also ignores Appellant's opening-brief analysis applying the transactional test and explaining why these suits do not arise from the same nucleus of operative fact. See Appellant Br. at 17–21, 39-41. Pigg's failure to engage that analysis confirms he has not carried his burden on the "same claim" element, and his bare label cannot support affirmance on claim preclusion. See *Test Masters*, 428 F.3d at 571; see also *Fed. R. Civ. P. 8(c)(1)*.

## D.     Even on Pigg's Mootness Premise, the Proper Disposition Would Be Vacatur and Dismissal Without Prejudice.

29.     Pigg cannot have it both ways. If he were correct that this appeal is moot, the ordinary course is vacatur and remand with directions to dismiss without prejudice, not affirmance of a with-prejudice merits dismissal. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). Mootness does not justify preserving a merits judgment with claim-preclusive consequences while simultaneously insisting there is no longer a live controversy.

## IV. PIGG'S ISSUE 2 FAILS FOR THE SAME REASON: NO FINAL JUDGMENT IN LAWSUIT 1, SO CLAIM PRECLUSION CANNOT BAR ANY "COULD-HAVE-BEEN-BROUGHT" THEORIES.

30.     Pigg's Issue 2 still depends on a predicate final judgment in Lawsuit 1. Claim preclusion requires a final judgment on the merits. Because this Court dismissed the appeal in Lawsuit 1 for lack of appellate jurisdiction, and Pigg concedes the claims "have not been finally adjudicated," Lawsuit 1 cannot supply the final-judgment element needed to bar Yan's additional theories as "could have been brought."

31.     Pigg's reliance on *Pittman v. Moore* does not support affirmance. *Pittman* concerns duplicative suits in the in forma pauperis context and holds that a duplicative-suit dismissal "should have been without prejudice" to prosecution of the pending suit. [980 F.2d 994, 995 (5th Cir. 1993)](). At most, Pittman supports case-management measures to avoid duplication. It does not justify a with-prejudice merits dismissal based on a predicate case that, by Pigg's own admission and this Court's jurisdictional disposition, has not been finally adjudicated.

## V. BARROWS' DUPLICATION ARGUMENT DEPENDS ON DISPUTED FACTS THAT CANNOT BE RESOLVED ON A MOTION TO DISMISS

32.     Barrows moved to dismiss on two theories, claim splitting (the rule against duplicative litigation) and res judicata (claim preclusion), asserting that Yan's claims here "duplicate" those in "Yan I" (also referred to as "Lawsuit 1" in Pigg's brief).

The district court's duplication ruling, as Barrows frames it, rests on a mischaracterized factual premise: that the June 21, 2022 TRO challenged in this case, and the injury it caused, are "actually" duplicative of the state-court ERISA funds issues litigated in Yan I.

33.     *Res judicata* (claim preclusion) is an affirmative defense that may be waived. *Fed. R. Civ. P. 8(c)(1)*. In the Fifth Circuit, claim splitting is an extension of r*es judicata* principles that may apply while the earlier suit is still pending; in that posture, the ordinary *res judicata* analysis is modified because no final judgment yet exists. *Armadillo Hotel Grp., L.L.C. v. Harris,* 84 F.4th 623, 628 (5th Cir. 2023).

34.     Claim splitting requires the same parties, or parties in privity. Where there is not total identity, privity is required, and the Fifth Circuit recognizes privity only in three narrowly defined circumstances: (1) the nonparty is the successor in interest to a party's interest in property; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interests were adequately represented by a party to the original suit. *Armadillo*, 84 F.4th at 630–31. *Armadillo* reversed because the pleadings and judicially noticeable materials did not supply sufficient facts to establish privity. *Id.* at 631–32.

A.      **Barrows Cannot Carry Armadillo's Elements on a Rule 12(b)(6) Record.**

35.     The same problem exists here. Barrows cites *Armadillo* for the proposition that dismissal under the claim-splitting doctrine may be proper while Yan I is pending. But *Armadillo* underscores the opposite point on this record: claim splitting requires total identity of parties or privity, and "parallel interests" or shared counsel do not establish privity. *Id.* at 630–31. Where the pleadings do not establish privity, dismissal at the motion-to-dismiss stage is error because "such inferences are inappropriate." *Id.* at 632. Here, Barrows' duplication theory depends on disputed factual premises and a contested identity theory that cannot be assumed against Yan at Rule 12(b)(6).

36.     Barrows also fails to provide the necessary record basis to satisfy *Armadillo*'s elements. She does not meaningfully compare the two operative pleadings to demonstrate total identity of parties or privity, or to show that the same claim, under the transactional test, is involved in both suits. At minimum, she must identify the operative complaints and cite record materials or judicially noticeable filings establishing those elements. She has not done so. Accordingly, her claim-splitting and claim-preclusion theories cannot be resolved against Yan on a motion to dismiss.

B.      **Barrows Misrepresents the Record to Manufacture a Non-Existent "Admission."**

37.    To support her argument, Barrows makes a materially false assertion that are false on their face, yet misrepresents it as Yan's own admission:

    a.  "Yan's claims regarding the "TRO" are premised on the notion that Wang never filed a motion requesting a "TRO" thereby depriving him of the opportunity to be heard in opposition. […] the "TRO" described by Yan is in the record. ROA.198. It is titled "Temporary Orders," […] Yan **admitted** that the "Temporary Orders" is the order at issue." Barrows Br. at 5 (emphasis added).

    b.  "Yan **admitted** that the "Temporary Orders" is the supposedly "fraudulent June 21 TRO" at issue in the Complaint. **ROA.657**. Indeed, the Associate Judge's Report for the November 2021 hearing is an exhibit to Third Amended Complaint in *Yan I*. ROA.24-10543.1170–1174." Barrows Br. at 8 (emphasis added).

38.    ROA.657 contains Yan's explicit denial of Barrows' theory. Yan stated:

    a.  "First of all, 2nd Complaint **never** mentioned the alleged falsified June 21 TRO had an actual hearing on November 8-9, 2021. MTD fabricated Yan's statement out of thin air." ROA.657 at ¶ 29 (emphasis added).

39.    Yan continued:

    a.  "Yan's allegation is clear: there was no hearing or motion for a TRO **filed by respondent Fuyan Wang.**" *Id* at ¶ 29.

40.    Far from "admitting" the orders are identical, Yan expressly challenged Barrows to produce evidence of any motion or hearing notice for the June 21, 2022 TRO. Barrows has not done so. *Id* at ¶¶ 29-31.

41.    The associate judge's report that Barrows cites as an exhibit to the Third Amended Complaint in Yan I, ROA.24-10543.1170–1174, is not the same subject as

the allegedly falsified June 21 TRO challenged in this case. First, in her motion to dismiss, Barrows did not submit or cite the associate judge's report to the district court, as Yan pointed out. ROA.656 ¶ 27. Second, even if the Court looks to the report, it shows that:

    a.  (X) Movant <u>Conghua Yan</u> (X) Attorney: <u>Anita Cutrer</u>

    b.  (X) Responder <u>Fuyan Wang</u> (X) Attorney: <u>Leslie Barrows</u>

        See ROA.24-10543.1171.

42.    The cited associate judge's report arose from a motion filed by Yan while he was represented by attorney **Anita Cutrer**. Regarding that report, Appellant alleged that he had a pending de novo hearing in the district court. ROA.72. In Texas, an associate judge's court is distinct from the district court. See ROA.72 n.4. The same principle applies in federal court to a magistrate judge's proceedings and a district judge's proceedings.

43.    By contrast, the allegedly falsified June 21 TRO in this case was signed by **Pigg** and Barrows and states that "the Court heard [Wang] Respondent's motion for temporary orders." Motions are not identical absent competent proof. Barrows has had ample opportunity to show that she filed a motion on behalf of her client (Respondent Wang) for temporary orders. She has not done so. Instead, throughout

the district court proceedings, no Appellee attempted to present evidence that Respondent Wang filed a motion for temporary orders.

44.    Texas law is clear. In *Baker v. Bizzle*, 687 S.W.3d 285 (Tex. 2024) (Devine, J.), Justice Devine explained that rendition requires a public announcement, and that an email sent only to counsel is "nonpublic" and therefore is not a rendition of judgment. Here, Appellant alleges that a docketed TRO caused his injury, but that "[t]here was no notice," "[t]here was no hearing," and "[t]here was obviously no neutral decision-maker because no ruling was pronounced in open court and the associate judge had no controversy pending in the associate judge's court on that date." ROA.62. A TRO entered in that manner has no legal effect, and is no more than a piece of toilet paper.

45.    Barrows' misrepresentation of ROA.657 to this Court is not a minor error, it is the foundation of her entire duplication defense. Without the false "admission," Barrows cannot establish that the two cases involve the <u>same transaction</u>. A party's material misrepresentation of the record forecloses reliance on disputed facts and requires this Court to construe all factual disputes against the misrepresenting party.

# VI. <u>JUDICIAL NOTICE DOES NOT ESTABLISH THE TRUTH OF BARROWS' FACTUAL ASSERTION.</u>

46.     Barrows requests judicial notice. But judicial notice extends only to adjudicative facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). The Court may take notice of the existence of filings, orders, and other public records, and of what they state on their face (including procedural history and dates). It may not, however, take judicial notice of the truth of disputed factual assertions contained in those materials, or use judicial notice to resolve contested facts against Yan at the Rule 12(b)(6) stage. Cherry-picking words out of context from a filing and then liberally construing a contested point as an "admission" does not convert it into an undisputed fact.

## VII. THE STATE's IMMUNITY ARGUMENT WARRANTS ONLY DISMISSAL WITHOUT PREJUDICE AS TO TEXAS, AND IT DOES NOT SUPPORT WITH-PREJUDICE AFFIRMANCE AS TO ANY OTHER APPELLEE

47.     After thoroughly reviewing the State's argument, Appellant does not dispute that the State of Texas is immune and is not a "person" under § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and that *Ex parte Young* does not authorize suit against the State itself. But that point is jurisdictional and supports, at most, dismissal **without prejudice** as to Texas. *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). It does not supply an alternative ground to affirm a **with-prejudice** judgment against other appellees, and it does not foreclose prospective relief against proper state officials under *Ex parte Young* where ongoing

violations are alleged. *Will*, 491 U.S. at 71 n.10; *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

48.     Accordingly, Appellant should be granted leave to amend to cure the defendant-identity defect in Count II by removing "the State of Texas" as a named defendant and pleading the § 1983 claim solely against the proper state official(s) in their official capacities for prospective declaratory and injunctive relief under *Ex parte Young*. Because sovereign immunity is jurisdictional, it supports dismissal without prejudice as to the State, not termination with prejudice. *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). If the panel concludes that the pleadings misidentified the proper official for any prospective remedy, the appropriate disposition remains remand with leave to amend under Rule 15(a)(2) and *Foman*, not termination with prejudice. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## VIII. BAUER/MACHETTA DO NOT BAR STANDING HERE: DEANGELIS ACTED OUTSIDE A PENDING CHAPTER-201 PROCEEDING, CAUSING ONGOING INJURY, AND REULE REQUIRES A ROLE-IN-SCHEME ANALYSIS

49.     DeAngelis's reply assumes the challenged conduct must be treated as ordinary "adjudication" simply because it is attributed to a judicial officer. Texas law rejects that premise. The Texas Supreme Court emphasized that a court's

decision gains legal effect only through official judicial action—a decision is rendered only when it is announced publicly (open court, filing with the clerk, or other public announcement), and a privately communicated ruling to counsel is not a public announcement and therefore lacks the legal significance of an adjudicatory act. *Baker v. Bizzle*, 687 S.W.3d 285, 291–92 (Tex. 2024).

50.     DeAngelis invokes *Bauer* and *Machetta* to argue there is "no case or controversy" with a judge and that Appellant must sue his "actual adversary—his wife." That is the reply's shortcut: it labels the challenged conduct "judicial decisions" and treats that label as dispositive. But *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003), and *Machetta v. Moren*, 726 F. App'x 219 (5th Cir. 2018) (per curiam), do not announce a blanket "judges can never be defendants" rule. As the Fifth Circuit reiterated, the Article III inquiry turns on whether the judge is acting in an **adjudicatory capacity**; conversely, where a judge acts as an enforcer or administrator of the challenged regime, a case or controversy may exist. *Reule v. Jackson*, 114 F.4th 360, 365–66 (5th Cir. 2024).

51.     No pending motion/application/referral matters because *Bauer/Machetta* presuppose a live dispute properly before the judge in an adjudicatory posture. If no Chapter-201 predicate invoked the associate judge's power (e.g., no referral/motion as pleaded under *Tex. Fam. Code §§ 201.005*, *201.007*), there was no litigated

request to adjudicate and thus no adverse "party" relationship in the Bauer sense. At minimum, the district court could not presume "adjudicatory capacity" without applying Reule's role-in-scheme analysis.

52. *Reule* supplies the controlling framework and shows the error in DeAngelis's shortcut. "To determine whether a case or controversy exists, courts look to the role the judge plays in the relevant statutory scheme," and relevant considerations include whether the judge **initiated** the challenged proceedings (or was "a cause of the statute being enacted") and whether the scheme compels or allows traditional safeguards such as notice and a hearing. *Reule*, 114 F.4th at 366 (citing *Machetta* and *Bauer*).

53. That role-based inquiry was not performed here. DeAngelis reduces the standing question to a label ("judge issued rulings"), yet simultaneously points to Texas Family Code Chapter 201 as the source and limit of an associate judge's authority. Under *Reule*, the proper question is whether—under Chapter 201 and the manner the challenged actions were undertaken—DeAngelis was acting "as [a judge] would in any other case" as a neutral adjudicator, or instead acted outside the Chapter-201 predicates that place a matter before an associate judge in the first place.

54.     Texas mandamus law confirms associate judges appointed under family code are a limited, distinct, and reviewable statutory office—reinforcing why the court must examine Chapter-201 predicates rather than assume "ordinary adjudication." *Tex. Gov't Code § 22.221(c)(2)* expressly authorizes courts of appeals to issue mandamus against "an associate judge … appointed … under Chapter 201, Family Code." This recognition of extraordinary-writ control aligns with Chapter-201's premise that an associate judge's authority is derivative and bounded, not inherent.

55.     Federal appellate courts review state-law determinations de novo, confirming that federal courts do (and must) determine state law when it matters to the federal question. *Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991). A "deeper look" likewise requires "looking to state law to determine a state court's subject-matter jurisdiction" *Rockett v. Eighmy*, 71 F.4th 665, 673 (8th Cir. 2023). Here, the trial court did not conduct that analysis.

56.     *Reule* itself uses *Stump* only for the proposition that functions compelled by a scheme may be "function[s] normally performed by a judge." *Reule*, 114 F.4th at 366. And *Stump* recognizes that some actions (even by a judge) can be "simply not an act of a judicial nature." *Stump v. Sparkman*, 435 U.S. 349, 359 n.10 (1978). Without Chapter-201 predicates placing a matter before the associate judge, the

challenged act cannot be assumed to be the kind of neutral adjudication *Bauer/Machetta* address.

57.    Standing: Appellant satisfies Article III injury, traceability, and redressability requirements. The Supreme Court has held that even a "substantial threat" of future enforcement is sufficient to establish an injury-in-fact. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (holding that pre-enforcement threats of prosecution create Article III standing); see also *Evans v. Garza*, No. 23-50541, slip op. at 4 (5th Cir. Dec. 9, 2025) (applying *Susan B. Anthony List* to find standing based on a threat of prosecution).

58.    Here, Appellant's standing is even clearer than in *Susan B. Anthony List* or *Evans*. Appellant does not face a mere threat of future harm; Appellant is suffering the actual, ongoing injury of wage garnishment and property deprivation. Because a threat of injury satisfies Article III, actual consummated financial deprivation necessarily satisfies the requirement. This injury is fairly traceable to the challenged acts and would be directly redressed by the prospective relief sought.

59.    Finally, Appellant does not bring a generalized facial challenge to any statute. He alleges concrete, ongoing injuries traceable to specific acts taken without the statutory predicates required for an associate judge to act (including the

referral/motion predicates pleaded under *Tex. Fam. Code §§ 201.005* and *201.007*)

and seeks relief tailored to ending ongoing enforcement effects. Those allegations

required the court to apply *Reule*'s role-in-scheme framework, not to assume "no

controversy" merely because the actor holds judicial office.

60.    These standing defects are distinct from any immunity defense, which cannot

supply an alternative basis to affirm a case-ending disposition and in any event does

not foreclose remand with leave to amend.

## IX. *TURNER V. RAYNES* IS DISTINGUISHABLE: AN ASSOCIATE JUDGE'S JURISDICTION IS DERIVATIVE, NOT INHERENT, AND ACTING WITHOUT A REFERRAL IS A "CLEAR ABSENCE OF ALL JURISDICTION"

61.    DeAngelis argues that under *Turner v. Raynes*, 611 F.2d 92 (5th Cir. 1980),

judicial immunity survives even grave procedural errors unless there is a "clear

absence of all jurisdiction.". She contends that as an associate judge, she enjoys the

same immunity as a district judge under *Tex. Fam. Code § 201.017*. This argument

collapses because it conflates the inherent jurisdiction of an elected District Judge

with the derivative jurisdiction of an statutory appointed Associate Judge.

62.    In *Turner*, the judge was an elected Justice of the Peace in a **constitutional**

**court** vested with **inherent** judicial power by *Texas Constitution, Article V, § 1*. For

such officers, procedural missteps constitute mere "excess of jurisdiction," leaving

immunity intact. *Turner*, 611 F.2d at 95. In stark contrast, associate judges appointed under Texas Family Code, **interchangeable as family law masters**, are not constitutional officers but mere creatures of statute. See Appellant Br. at 42-43.

63.     Unlike the Justice of Peace court's inherent jurisdiction, an associate judge court's jurisdiction under Texas Family Code is purely derivative—existing only upon a valid referral. (See Appellant Br. at 41–43). A statutory administrator's act does not become a judicial act by default or label. DeAngelis concedes no referral existed here. Without that statutory conduit, she acted not in 'excess' of jurisdiction, but in the 'clear absence' of it. In that vacuum, she was not an erroneous judge, but a private citizen acting under color of office without immunity.

64.     DeAngelis cites *Wood v. Parker Cnty.* and *Harry v. Lauderdale Cnty.* to bolster her immunity claim. Both cases involved judges with independent, inherent jurisdictional grants (a County Judge and a Circuit Judge, respectively). Neither case addresses the unique status of a Texas Family Code appointed Associate Judge quietly signing a restraining order in her court. "Jurisdiction, in its narrow sense, is something possessed by courts, not by judges. The judge is merely **an officer of the court, like the lawyers, the bailiff and the court reporter**. He is not the court itself."

"While our case law has called the authority of the judge to preside a jurisdictional issue, we now disavow that characterization, because as we have explained,

jurisdiction or judicial power is vested in courts, not individuals." *Davis v. State*, 956 S.W.2d 555, 557-559 (Tex. Crim. App. 1997).

65.     A close examination of the Texas Constitution and statutes reveals a critical distinction. While federal courts have discretion to apply federal judicial-immunity doctrine, that discretion is narrower when the immunity claim involves a Texas court officeholder's act, because the scope of that court's jurisdiction depends on Texas law. Federal common-law judicial immunity cannot speculate about the jurisdictional boundaries that Texas law place on the state statutory office. That state law inquiry was not performed by district court here.

66.     In this case, Appellant does not plead mere procedural error. Appellant pleads that because the statutory predicates of Chapter 201 (Referral/Motion) were never satisfied, DeAngelis's court never acquired the derivative jurisdiction to adjudicate on that date (Appellate Br. at 43). Without that derivative grant, her actions were not "judicial acts" performed in "excess of jurisdiction," but non-judicial acts performed in the complete absence of jurisdiction. Under *Stump v. Sparkman*, 435 U.S. 349 (1978), and the logic of *Turner*, immunity does not attach to such conduct.

## X. DEANGELIS'S BRIEF DOES NOT SUPPLY AN ALTERNATIVE BASIS TO AFFIRM ON THE MERITS OR TO FORECLOSE REMAND WITH LEAVE TO AMEND

## A. No waiver: DeAngelis relies on theories not reached as to her, and Appellant properly responds in reply.

67.     DeAngelis argues Appellant "waived" responses to her alternative bases for affirmance. But waiver in this context concerns independent grounds actually adopted by the district court and left unchallenged in the opening brief. Here, DeAngelis presses theories the district court did not adopt as dispositive grounds as to her. Appellant therefore had no obligation to anticipate and brief those unreached theories in the opening brief; Appellant properly addresses them now in reply. See *Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol N. Am., Inc.*, 544 F. App'x 455, 456–57 (5th Cir. 2013) (per curiam) (explaining that a jurisdictional dismissal cannot be converted into a merits disposition).

## B. Judicial immunity does not justify affirmance, and it does not foreclose remand with leave to amend.

68.     DeAngelis invokes absolute judicial immunity for "actions and omissions in her judicial capacity." But judicial immunity is a functional inquiry, not a title-based one. As shown in Sections VIII–IX, Appellant plausibly alleges conduct that was **nonjudicial/administrative** or taken in the **clear absence of all jurisdiction** because the Chapter-201 predicates placing any matter before the associate judge were never satisfied (including the referral/motion predicates pleaded under *Tex. Fam. Code §§ 201.005* and *201.007*). Under *Mireles* and *Stump*, those allegations preclude

treating immunity as a categorical, case-ending alternative ground for affirmance. In any event, even if the panel concludes immunity bars some claims as currently pleaded, that conclusion still **does not justify affirmance of a disposition that forecloses amendment.** At minimum, remand with leave to amend is required where Appellant can plead additional specific facts—consistent with Rule 11 and the record—bearing on the nonjudicial or clear-absence-of-jurisdiction exceptions. *Fed. R. Civ. P. 15(a)(2)*; *Foman.*

C.     **Prospective relief, supplemental jurisdiction, and requested disposition.**

69.     DeAngelis seeks to collapse all official-capacity prospective relief into sovereign immunity. That is incorrect as a categorical matter. *Ex parte Young* permits prospective relief against state officials for ongoing violations of federal law. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Separately, § 1983 provides that as to a "judicial officer" acting in a judicial capacity, "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *42 U.S.C. § 1983*. Accordingly, even if the panel concludes (as discussed in Section VII) that some portion of Appellant's prospective theory must be directed to the proper enforcement/implementing officials rather than an adjudicator—or that the requested remedy must be reframed to conform to § 1983— that conclusion supports remand to replead the official-capacity theory and

requested relief, not affirmance on a case-ending merits rationale. DeAngelis's supplemental-jurisdiction point likewise depends on elimination of all federal claims; if the Court reinstates any federal claim or remands for amendment as above, supplemental jurisdiction is not an alternative basis to end the case.

70.     For these reasons, DeAngelis's brief does not supply an alternative basis to affirm a case-ending disposition or to foreclose repleading. At minimum, any Article III or sovereign-immunity defect supports only a without-prejudice disposition as to the jurisdictional defect, and any defendant-identity or remedy-framing defect warrants remand with leave to amend under Rule 15(a)(2) and *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## XI. NO APPELLEE ADDRESSED THE DENIAL OF LEAVE TO AMEND—A GROUND FOR REVERSAL STANDING ALONE

71.     Appellant previously established the binding standard requiring leave to amend absent a substantial reason for denial. (Appellant Br. at 27–28). Crucially, no Appellee attempts to defend the district court's failure to apply this standard or its failure to provide a reason for denying leave.

72.     The district court record reflects that Appellant made **no** amendment **after** *initial* service of the summons and complaint on Defendants, and thus had **no** opportunity to cure any pleading defects. The district court did not identify any

substantial reason to deny leave. It simply concluded that a district court does not err in dismissing a pro se complaint with prejudice if it determines that the plaintiff has pleaded his best case. ROA.700. "[T]he discretion of the district court is not broad enough to permit denial." *Dussouy*, 660 F.2d at 598. The district court's categorical refusal to permit amendment was an abuse of discretion. ROA.692-714, 745.

73.     No appellee defends the district court's denial of leave to amend. Not the State, not DeAngelis, and not Pigg. Barrows *concludes* that Yan "has pleaded his best case" across two lawsuits (Barrows Br. at 12), but she does not defend the district court's *failure* to address *Rule 15(a)(2)*, or *explain* why dismissal with prejudice is proper under *Forman*, *Great Plains*, and *Dussouy*. No appellee defends the district court's denial of leave to amend; any defense of the with-prejudice dismissal without leave is forfeited, and reversal is warranted on that basis alone.

## XII. ALTERNATIVE GROUNDS RAISED BY DeANGELIS AND BARROWS CANNOT SUPPORT DISMISSAL WITH PREJUDICE

74.     Barrows raises alternative grounds not reached by the district court: (1) no plausible RICO claim, specifically alleging adversarial litigation conduct is improper (*Snow Ingredients*, Barrows Br. at 24) and lack of continuity (*D&T Partners*, Barrows Br. at 25-27); (2) no § 1983 claim because Barrows is a private actor; and (3)

state-law claims fail on attorney immunity (Barrows Br. at 34-37). None of these specific theories appear in the FCR or district court judgment. ROA.692-714, 745. DeAngelis similarly urges alternative grounds including *Younger* abstention, failure to state a claim, and qualified immunity. DeAngelis Br. at 15-16.

75.     Even if this Court considers these alternative grounds for affirmance, they cannot support a dismissal with prejudice. Because no appellee defended the district court's denial of leave to amend, appellees have forfeited any defense of the Rule 15 ruling. Accordingly, any pleading "deficiencies" identified for the first time on appeal cannot justify affirmance with prejudice. This Court should vacate the with-prejudice judgment and remand with instructions to grant leave to amend under Rule 15's liberal standard.

## A.     Alternative Grounds Were Not Reached Below

76.     While this Court may affirm on alternative grounds, *Lauren C. ex rel. Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 374 (5th Cir. 2018), the district court did not reach these merits-based arguments. The FCR dismissed on **jurisdictional, immunity, and preclusion grounds**—not on failure to state a claim. ROA.692-714. Barrows and DeAngelis now ask this Court to **first view on grounds the district court never considered**.

77.     DeAngelis labels these "independent bases" and claims waiver, yet she also concedes the district court's abstention and Eleventh Amendment rulings did not include her and therefore she does not address those arguments, confirming there is no "adequate and independent" basis here for <u>affirmance with prejudice</u>.

78.     The Supreme Court stated appellate court is not the pioneer court to decide any issue that the trial court did not take a stance. "Nor, to our knowledge, did the trial court ever take a stance on that issue. Because "we are a court of review, not of first view," we will not be the pioneer court to decide the matter." *[Smith v. Arizona,](#)* *[144 S. Ct. 1785, 1801 (2024)](#)*.

## B.     Even if Appellees Prevail on Their Alternative Grounds, the Proper Remedy Is Remand with Leave to Amend

79.     This Court ""generally prefer to adhere to our policy of being 'a court of review, not first view.'" … "So rather than decide these heady questions ourselves without the benefit of any considered judgment below,"" This Court should ask "the district court to address the ratification theory that it identified "in the first instance," so that "[this Court] will be better positioned to weigh in" on this issue and consider the other issues raised." *[Arnesen v. Raimondo](#)*, [115 F.4th 410, 414 (5th Cir. 2024)](#).

80.     This Court also held, "a court may not dismiss on the pleadings if the allegations support relief on any possible theory …[if] the district court did not reach this issue, we do not address it." *Coghlan v. Wellcraft Marine Corporation*, 240 F.3d 449, 452 n.2 (5th Cir. 2001). Therefore, Appellant asks this Court to decline to consider these alternative grounds in the first instance.

81.     Even assuming arguendo that this Court considers appellees' alternative grounds for affirmance, those arguments cannot sustain a with-prejudice dismissal in light of the unchallenged Rule 15 error. The proper disposition is remand with instructions to grant leave to amend under Rule 15(a)(2)'s liberal standard. See supra Part II.1–2.

## CONCLUSION

82.     For the RICO claim, no Appellee applied the minimum analysis, as Appellant did, of the distinct transactions or occurrences, actors, enterprises, predicates, time periods, and geographic scope. See Appellant Br. at 39.

83.     For the *§ 1983* claim, no Appellee asserted that there was a motion for TRO filed by Wang, a hearing for that motion held, a notice for that hearing existed. Those facts are sufficient to establish the basis for this suit.

84.     For these reasons, Appellant respectfully requests that this Court to grant all

the relief sought in the Opening Brief.

Respectfully submitted,


*/s/ Conghua Yan*

Conghua Yan, Pro Se Appellant

2140 E Southlake Blvd, Suite L-439

Southlake, Texas 76092

214-228-1886

arnold200@gmail.com

## CERTIFICATE OF SERVICE

I certify that on Jan 29, 2026, the foregoing Reply Brief was served via the Court's CM/ECF system on all registered counsel of record.

*/s/ Conghua Yan*
Conghua Yan

## CERTIFICATE OF COMPLIANCE

I certify that this Reply Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,492 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Equity font.

*/s/ Conghua Yan*
Conghua Yan