U.S. COURT OF APPEALS
RECEIVED
Aug 25, 2026
FIFTH CIRCUIT

**No. 25-10752**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Conghua Yan, *Plaintiff-Appellant*

v.

The State of Texas; Leslie Starr Barrows, in Individual Capacity; William Albert Pigg, in Individual Capacity; Lori L. DeAngelis, in Individual Capacity and Official Capacity as Associated Judge; Panopyra P.L.L.C., A Private Company; Fuyan Wang, in Individual Capacity; Jiayin Zheng, in Individual Capacity; Yuanli Tang, in Individual Capacity,

*Defendants-Appellees*

On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division
USDC No. 4:24-CV-579, The Honorable Reed C. O'Connor, District Judge

## PETITION OF PLAINTIFF-APPELLANT CONGHUA YAN FOR PANEL REHEARING AND, ALTERNATIVELY, FOR PUBLICATION

Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
Pro Se Appellant

## CERTIFICATE OF INTERESTED PERSONS

Plaintiff-Appellant Conghua Yan certifies that the following persons and entities have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**Parties:** Conghua Yan; the State of Texas; Leslie Starr Barrows; William Albert Pigg; Lori L. DeAngelis; Panopyra P.L.L.C.; Fuyan Wang; Jiayin Zheng; and Yuanli Tang.

**Counsel who appeared below or on appeal:** Roy Adams, Assistant Attorney General, Office of the Attorney General of Texas (Texas); J. Nathaniel James and Caroline Marie Cyrier, Harris, Finley & Bogle, P.C. (Barrows); William A. Pigg, William A. Pigg PLLC (Pigg); Katherine Elizabeth Owens and Mallory A. Schuit, Tarrant County Criminal District Attorney's Office (DeAngelis); Charles Davis Chapman, Law Office of C. Davis Chapman, and Cody Martin, Martin Oostdyk PLLC (Panopyra P.L.L.C., Wang, and Tang). Jiayin Zheng appeared without counsel.

/s/ Conghua Yan, Pro Se Appellant

## POINTS OVERLOOKED OR MISAPPREHENDED

Panel rehearing is warranted for five discrete errors. First, the opinion turned the neutral-adjudicator principle into an Article III bar to a personal-capacity damages claim alleging the judge's own completed conduct, foreclosing the clear-absence exception. Second, after rejecting the grounds used below against the nonbriefing Panopyra Defendants, the panel first applied four fact-dependent grounds they never raised and declared amendment futile. The remaining errors concern structuring particulars, continuity, and claim splitting.

First, the opinion used the challenged instrument's recitals and a different proceeding to establish DeAngelis's adjudicatory role, then found no Article III controversy without reaching immunity. Op. 2–3 & n.1. But the complaint alleged the instrument was fabricated and concealed: no Wang motion, notice, hearing on that motion, open-court ruling, or authentic signature. ROA.62–63, 71–73, 78. If applied as here, **the expanded Article III rule swallows the clear-absence-of-all-jurisdiction exception before immunity can be considered**. The nonprecedential designation does not erase that material doctrinal expansion. Yan preserved the dispute. ROA.741–42; Opening Br. 28–32, 41–44; Reply Br. 19–22.

Second, procedure departed at both levels. Panopyra and Wang jointly answered and Tang answered separately, but none filed a Rule 12 dismissal motion; Zheng

appeared and obtained an extension, but the FCR issued on the response date without an answer or motion. Dist. Ct. ECF Nos. 52–55, 58, 63. The FCR sua sponte recommended dismissal. ROA.692–714. **After all four failed to brief on appeal even after overdue notices, the opinion rejected the two district-court grounds it identified, supplied four fact-intensive RICO defects, and declared amendment futile.** 5th Cir. Dkt. 53–55; Opening Br. 19; Op. 4–7. *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (per curiam), held that deciding a materially different issue without an opportunity to address it violated party presentation. At minimum, those questions should return to the district court.

Third, footnote 5 acknowledged that Section 5324 structuring can be a RICO predicate, yet the opinion did not address the transaction table at ROA.67 paragraphs 24–26: four control numbers, four dates, four amounts, two Western Union agent locations, one sender, and one recipient in China. Three transfers were $2,900; the related fourth was $3,000. Yan reproduced the control numbers and cited ROA.67 in his Statement of Facts. Opening Br. 19. **The opinion declared the averments insufficient without addressing those preserved particulars**.

Fourth, *EnvTech, Inc. v. DeBusk*, 178 F.4th 208, 227–31 (5th Cir. 2026), issued after briefing but before the opinion. Although it does not dictate the ultimate continuity result, it compels a fact-intensive inquiry into whether recurring

predicates alleged as a regular business practice or repeatable method threaten repetition. The opinion instead inferred a single divorce objective for transfers alleged to **begin years before the divorce**.

Fifth, the claim-splitting ruling substituted the phrase "entry of a temporary order in a divorce proceeding" for *Armadillo*'s defendant-specific transactional analysis. Op. 3. Barrows invoked claim splitting for herself; Pigg separately argued duplication. Barrows Br. 10, 15–19; Pigg Br. 2–8. But the opinion **did not identify the same order or compare Yan's claim against either appellee with the corresponding claim in *Yan I***. *Yan I* concerned April–May 2022 QDROs and ERISA disbursement; this action concerns a different June 21 instrument, concealment, home exclusion, and wage garnishment. Opening Br. 38–40.

These particular errors of fact and law warrant panel rehearing under Federal Rule of Appellate Procedure 40(b)(1) and Fifth Circuit Rule 40.1.2. If rehearing is denied, publication is warranted under Fifth Circuit Rule 47.5.1 because the opinion applies published law to materially different circumstances, resolves asserted conflicts, and affirms on different grounds.

TABLE OF CONTENTS

Certificate of Interested Persons ........................................................................2
Points Overlooked or Misapprehended...................................................................3
Table of Contents ..................................................................................................6
Table of Authorities...............................................................................................7
Argument...............................................................................................................8
I. The opinion's expanded Article III rule rests on disputed recitals and swallows the clear-absence exception ..........................................................................8
II. After rejecting both district-court grounds it identified against the Panopyra Defendants, the panel supplied new grounds and denied amendment ..................13
III. The panel overlooked the preserved Western Union transaction particulars when rejecting the structuring route ..........................................................17
IV. The continuity ruling overlooks EnvTech and draws an adverse inference not compelled by the complaint .......................................................................19
V. The opinion substituted an abstract description for *Armadillo*'s claim-by-claim transactional analysis ..................................................................................21
Conclusion ...........................................................................................................22
Certificate of Service ...........................................................................................23
Certificate of Compliance ....................................................................................24

## TABLE OF AUTHORITIES

Cases

*Armadillo Hotel Grp., L.L.C. v. Harris, 84 F.4th 623 (5th Cir. 2023)*..........5, 21–22
*Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620 (5th Cir. 2013) ........................15
*Bauer v. Texas, 341 F.3d 352 (5th Cir. 2003)*..........................................................10
*Bradley v. Fisher*, 80 U.S. 335 (1872) ......................................................................12
*Central Laborers' Pension Fund v. Integrated Electrical Services, Inc., 497 F.3d 546 (5th Cir. 2007)*..........................................................................................9
*Clark v. Sweeney*, 607 U.S. 7 (2025) (per curiam) ..................................................15
*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007)....................................................15
*Davis v. Warren, 173 F.4th 566 (5th Cir. 2026)* ...............................................12, 17
*D&T Partners, L.L.C. v. Baymark Partners Management, L.L.C., 98 F.4th 198 (5th Cir. 2024)* ...............................................................................................20
*Edionwe v. Bailey, 860 F.3d 287 (5th Cir. 2017)* ....................................................17
*EnvTech, Inc. v. DeBusk, 178 F.4th 208 (5th Cir. 2026)* ..............................4, 19–21
*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305 (5th Cir. 2002)* ...............................................................................................17
*In re Burzynski, 989 F.2d 733 (5th Cir. 1993)*.........................................................20
*Lone Star Ladies Investment Club v. Schlotzsky's Inc., 238 F.3d 363 (5th Cir. 2001)* .........................................................................................................17
*Lovelace v. Software Spectrum Inc., 78 F.3d 1015 (5th Cir. 1996)* ..........................9
*Machetta v. Moren, 726 F. App'x 219 (5th Cir. 2018) (per curiam)*.......................11
*Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285 (2026) (per curiam)...4, 15–16
*Mireles v. Waco, 502 U.S. 9 (1991) (per curiam)* .............................................11–12
*Pulliam v. Allen, 466 U.S. 522 (1984)* ....................................................................10
*Reule v. Jackson, 114 F.4th 360 (5th Cir. 2024)* ..............................................10–11
*Salinas v. United States, 522 U.S. 52 (1997)* ..........................................................19
*Scanlan v. Texas A&M University, 343 F.3d 533 (5th Cir. 2003)* .............................9
*Stump v. Sparkman*, 435 U.S. 349 (1978)...............................................................12
*Thompson v. McGehee, No. 25-10196 (5th Cir. July 17, 2026)* .............................13
*United States ex rel. Branch Consultants v. Allstate Insurance Co., 560 F.3d 371 (5th Cir. 2009)*..........................................................................................17
*United States v. Chesteen*, No. 19-30195 (5th Cir. Feb. 20, 2020) (per curiam)....16
*United States v. Thomas, 847 F.3d 193 (5th Cir. 2017)* ..........................................17
*Whole Woman's Health v. Jackson, 595 U.S. 30 (2021)* .........................................10

*Zinermon v. Burch, 494 U.S. 113 (1990)*....10
Statutes and Rules
U.S. Const. art. III....3, 8, 11–12, 22
18 U.S.C. §§ 1961–1962....18
31 U.S.C. § 5324....4, 17–18
42 U.S.C. § 1983....11–12
Fed. R. App. P. 40....5
Fed. R. Civ. P. 9(b), 12(b)(6), 12(c), 15(a)(2)....9, 11, 13–18, 20
5th Cir. R. 40.1.2, 47.5.1....5, 23

## ARGUMENT

### I. The opinion's expanded Article III rule rests on disputed recitals and swallows the clear-absence exception.

The complaint alleged Barrows drafted and submitted the instrument, Pigg forged Yan's signature, Wang filed no predicate motion, no notice or hearing on that motion occurred, DeAngelis rendered no ruling in open court, and the instrument was secretly docketed and withheld from Yan. ROA.62–63, 71–73, 78. Yet the opinion treated the instrument's apparent signature and Yan's appearance at a different proceeding as establishing that it "followed a hearing" and that DeAngelis acted "in an adjudicatory capacity." Op. 2–3.

At Rule 12, the opinion thus permitted the challenged instrument to prove the truth of the very adjudicatory facts alleged to have been fabricated. Barrows had asked the Court to infer a hearing from the instrument and prior-case material. Barrows Br. 5 & n.2, 12–13. Yan's reply expressly disputed that premise and quoted

ROA.657 paragraph 29: Barrows's motion "fabricated Yan's statement out of thin air," and "there was no hearing or motion for a TRO filed by respondent Fuyan Wang." Reply Br. 19–22. No district-court finding or independent evidence resolved the dispute. Apart from the challenged instrument, its disputed signature, and material concerning a different proceeding, no independent evidence established a Wang motion, notice, a hearing on that motion, an open-court rendition, or contemporaneous knowledge by Yan. The dispute was preserved below and on appeal. ROA.741–42; Opening Br. 28–32, 41–44; Reply Br. 19–22. Thus, as applied here, an instrument alleged to have been fabricated, forged, secretly docketed, and concealed without notice was treated as adjudicatory because its disputed recital was linked to a hearing on another motion.

*Scanlan* permits a court to consider a document attached to a Rule 12 motion when the complaint refers to it and it is central to the claim; it does not permit accepting disputed factual recitals as true or resolving authenticity against the pleader. *Scanlan v. Texas A&M University, 343 F.3d 533, 536–37 (5th Cir. 2003).* *Lovelace* likewise permits consideration of a public record to determine what it says, not to prove the truth of disputed contents. *Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017–18 (5th Cir. 1996).* *Central Laborers* made the distinction explicit: a public divorce decree was considered because its truth was not disputed, while the result could differ "if the terms of the divorce were in dispute." 497 F.3d 546, 555

(5th Cir. 2007). The panel could consider that the challenged instrument exists and recites a hearing; it could not use that disputed recital to find that the hearing occurred. Here, the truth, origin, and authenticity of the instrument are the claim. *Zinermon* confirms that an apparent signature does not conclusively establish valid consent at Rule 12: although signed admission forms accompanied Burch's complaint, the Court accepted allegations that he lacked capacity and received no required hearing. 494 U.S. 113, 118–20, 133–39 (1990).

*Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021), concerned judges neutrally deciding claims **under a statute** the plaintiff **attacked**. It distinguished *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984), where the judge enforced a rule of her own creation. *Bauer* made capacity conduct-specific: whether Olsen acted outside adjudicatory capacity. 341 F.3d at 359. It relied on presented evidence, an application, notice, and a hearing—"all of which were followed here." *Id*. at 360–61. *Bauer* separately distinguished alleged bribery because it "is not within a judge's adjudicatory capacity." *Id*. at 361. Its no-adversity holding was only "as to whether section 875 is facially unconstitutional." *Id*. Status and chronology therefore cannot decide the challenged function.

*Reule* asks whether the judge actually functioned as neutral adjudicator or enforcer/administrator. It relied on actual requests, criteria, notice-and-hearing

procedures, and ordinary decisional functions. 114 F.4th at 365–67. Here no identified Wang request, notice, hearing, evidence, factfinding, or ruling supplied a matter to adjudicate. The only overlap was the date. The actual appearance concerned Yan's motion, with Cutrer as counsel; the instrument instead made Wang movant and Yan respondent. Pigg was not Yan's counsel. Those facts place DeAngelis's role in dispute. A different same-date hearing cannot establish adjudication of the Wang matter, and the instrument cannot supply that missing predicate by reciting it.

*Machetta* sought only injunctive and declaratory relief. It applied § 1983's 1996 amendment only to injunctive relief and addressed declaratory relief under Younger; it did not immunize judges from suit or decide an individual-capacity damages claim alleging the judge's own fraud. 726 F. App'x at 219–21.

The complaint alleged that DeAngelis personally participated in conduct causing completed losses of Yan's home and wages and sought damages against her individually. ROA.62–63, 71–73. *Reule* expressly separates "the lack of an Article III case or controversy" from "the availability of judicial immunity." 114 F.4th at 367 n.3. It further recognizes that when a defendant's conduct causes injury, damages will ordinarily redress it. Id. at 367 n.4. *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (per curiam), supplies the function-and-expectations test for whether conduct is judicial

for immunity purposes. The panel did not reach immunity. Op. 3 n.1. It therefore could not use the disputed conclusion "adjudicatory capacity" as a jurisdictional shortcut around the pleaded actual-role dispute. Yan asks only that disputed authenticity and role not be resolved against him at Rule 12.

**If the opinion's expanded Article III rule is applied as it was here, it swallows the Supreme Court's clear-absence-of-all-jurisdiction exception before immunity can ever be considered.** Bradley v. Fisher explained that a probate judge who tries a criminal case acts in clear absence of all jurisdiction and is not protected from liability. 80 U.S. 335, 351–52 (1872). *Stump v. Sparkman* preserved that example and distinction. 435 U.S. 349, 356–57 & n.7 (1978). *Mireles* then stated the governing category expressly: immunity does not extend to "actions, though judicial in nature, taken in the complete absence of all jurisdiction." 502 U.S. at 11–12. **Yet under the opinion's approach**, the probate judge's trial and order would establish "adjudicatory capacity," eliminate Article III adversity, and **prevent any court from reaching that exception**. *Bradley*, *Stump*, and *Mireles* are immunity decisions, not Article III holdings; that is precisely why **Article III cannot be expanded to make their immunity exception legally inoperative**.

Recent published decisions reinforce the proper course. Davis recognized evidence fabrication as a distinct Section 1983 theory and, although the pro se

plaintiff had not distinctly pleaded it, permitted him to attempt an amended complaint on remand. *173 F.4th at 573*. *Thompson* remanded a preserved fabrication theory not addressed below. *No. 25-10196, slip op. at 28–29*. Yan distinctly pleaded forgery and fabrication. ROA.62–63, 71–73. These criminal-evidence cases do not decide this property-order claim; they show that the court should analyze the preserved theory on its pleaded facts or remand, not presume the challenged instrument genuine at Rule 12.

II. After rejecting both district-court grounds it identified against the Panopyra Defendants, the panel supplied new grounds and denied amendment.

The opinion **rejected both grounds** it identified below against the Panopyra Defendants: duplication failed because they were not parties to *Yan I* and privity was absent; *Younger* failed because their alleged RICO conduct predated and was independent of the divorce. Op. 4 n.4. The procedural departure began below. Yan paid the $405 filing fee; this was not § 1915 screening. Dist. Ct. ECF Nos. 1–2. **Panopyra and Wang jointly answered**, and **Tang answered separately**; **none filed a Rule 12 dismissal motion**. Dist. Ct. ECF Nos. 52–53. Zheng appeared pro se and obtained an extension through January 16, 2025, to 'answer, move, or otherwise respond,' but **filed no answer or dismissal motion** by the time the FCR issued that same date. *Id*. Nos. 54–55, 58, 63. Without a dismissal motion from any Panopyra Defendant, the FCR sua sponte recommended dismissal without prejudice,

and the district court adopted that recommendation. ROA.692–714, 745. On appeal, **all four filed no brief** even after overdue-brief notices; the docket records, 'No response received.' 5th Cir. Dkt. 53–55. Barrows's counsel did not represent them, and her stated issue requested alternative RICO affirmance only 'against Barrows.' Barrows Br. 4, 20–28.

| District-court ground | Panel disposition |
|---|---|
| Duplicative litigation / claim splitting | Rejected: the Panopyra Defendants were not parties to Yan I, and the record did not establish privity. Op. 4 n.4. |
| *Younger* abstention | Rejected: the alleged laundering began in 2018, was independent of the divorce, and did not seek to invalidate or interfere with a state order. Op. 4 n.4. |

This point does not ask the panel to resolve the ultimate RICO sufficiency questions. It asks whether the panel could first apply **four fact-dependent grounds**—wire-fraud sufficiency, specified unlawful activity and knowledge, Rule 9(b) structuring particulars, and continuity—to nonbriefing defendants who never presented them, omit contrary pleaded facts, and simultaneously deny amendment. Op. 4–7. ROA.67 paragraphs 24–26 contained the transaction table, and Yan reproduced its four control numbers in his Statement of Facts. Opening Br. 19. Yan also requested Rule 15 relief. Opening Br. 33–34, 60.

Briefing closed with Yan's reply on February 3, 2026. On May 26, after briefing and before the opinion, the Supreme Court decided *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (per curiam). *Margolin* held that a court violates party presentation when it decides "a case different from the one [a party] advanced" without giving either side a chance to address the theory. Yan filed a Rule 28(j) letter citing *Margolin* before the opinion.

*Clark v. Sweeney* put the point plainly: courts "call balls and strikes"; they do not "get a turn at bat." 607 U.S. 7, 9 (2025) (per curiam). *Margolin* then applied that rule and reversed because the appellate court decided a materially different issue without giving either side an opportunity to address it. 146 S. Ct. at 1288. Here, **the panel supplied four grounds that no Panopyra Defendant presented**, treated them as dispositive while **omitting the Western Union transaction facts**, and declared amendment futile **before** Yan could address or cure their defendant-specific application.

The opinion cited *Asadi* for authority to affirm on "any basis supported by the record." Op. 4; 720 F.3d 620, 622 (5th Cir. 2013). But the same paragraph of *Asadi* requires accepting all well-pleaded facts as true and viewing them in Yan's favor. *Id.* *Cuvillier v. Taylor* states the Rule 12 limit more precisely: affirmance may rest on grounds "raised below **and** supported by the record." 503 F.3d 397, 401 (5th Cir.

2007). Neither condition was met as to the Panopyra Defendants. None raised the four grounds below, and the insufficiency conclusion omitted the transaction particulars pleaded at ROA.67 paragraphs 24–26 and preserved at Opening Brief 19.

United States v. Chesteen collects this Court's cases and rejects the proposition that record support alone generally permits affirmance on a ground not raised below. No. 19-30195, slip op. at 9–10 (5th Cir. Feb. 20, 2020) (per curiam). It applied the general rule where the opponent lacked an opportunity to develop and contest the ground, the ground was not implicit in an issue raised below, the record was inadequately developed, and the trial court had no opportunity to rule. *Id.* Those features are present here. The narrow exception for a pure question of law briefed by all parties does not fit fact-dependent questions of transaction particulars, Wang's knowledge, Rule 9(b), continuity, and competing inferences. Thus *Margolin*'s reversal posture does not authorize this affirmance: Fifth Circuit law independently requires the ground to have been raised below. The opinion cites no authority for this precise combination: a sua sponte trial-court dismissal; no merits defense by the affected appellees on appeal; rejection of the identified trial-court grounds; first appellate application of four different fact-dependent grounds; omission of pleaded particulars; and simultaneous denial of amendment. **Objectively, the operative grounds at both levels came from the courts**, and Yan first learned their Panopyra-specific application in the opinion that also declared amendment futile.

*Branch Consultants* identifies the corrective course. After rejecting the district court's dismissal ground, this Court declined to decide alternative Rule 9(b) issues customarily analyzed first by the district court and remanded. 560 F.3d 371, 383 (5th Cir. 2009). *Davis* likewise declined first-instance resolution and allowed amendment on remand. 173 F.4th 566, 573 (5th Cir. 2026). *Great Plains* ordinarily provides one opportunity to cure unless defects are clearly incurable or the plaintiff says he cannot or will not amend. 313 F.3d 305, 329 (5th Cir. 2002). *Edionwe* involved a defect identified in a Rule 12(c) motion and a later proposed complaint that remained deficient. 860 F.3d 287, 289–90, 294 (5th Cir. 2017). Here the four grounds were first applied to parties absent from Yan I and simultaneously declared incurable. At minimum, the panel should withdraw those alternative-ground and futility rulings and remand them for first-instance consideration after notice and an opportunity to amend.

III. The panel overlooked the preserved Western Union transaction particulars when rejecting the structuring route.

The opinion acknowledged that Section 5324 structuring can be a RICO predicate but held that the pleaded averments "sound[s] in fraud." Op. 5 n.5. Section 5324 does not make a false representation an element. *United States v. Thomas, 847 F.3d 193, 205* n.10 (5th Cir. 2017). *Lone Star Ladies* requires an averment-specific inquiry: Rule 9(b) applies to averments of fraud, not automatically to every

allegation within a non-fraud statutory theory. *238 F.3d 363, 368–69 (5th Cir. 2001)*. The opinion identified no false representation beyond the intent to evade an identification or recordkeeping requirement.

Assuming arguendo, without conceding, that Rule 9(b) applies, the complaint already supplied transaction-level particulars. ROA.67 paragraphs 24–26 identified Wang as sender; Changgui Wang's China account as recipient; $11,700 in cash; four dates; four amounts; four Western Union control numbers—3323973310, 6649450578, 4601136731, and 6987537723—and two agent locations, First Convenience Bank #694 and Woodforest #0723. It alleged the purpose was to avoid Western Union's $3,000 identity-verification requirement and conceal the source. Yan reproduced the control numbers and cited ROA.67 in his Statement of Facts. Opening Br. 19. Those facts supply who, what, when, where, and how; Rule 9(b) permits knowledge and intent to be alleged generally.

The table alleged three $2,900 transfers immediately below the asserted threshold and one related $3,000 transfer. The pleading is therefore more particular than the opinion acknowledged. The allegations do not automatically prove that every transaction satisfies Section 5324 or every element of the separate wire-fraud and money-laundering routes. But footnote 5 acknowledged that Section 5324 structuring can qualify as a RICO predicate, and Section 1961(5) requires two acts.

If the three $2,900 transfers qualify, they exceed that numerical minimum; the fourth transaction supplies context for the alleged common course. The complaint also alleged grouped bank transactions, later attorney-controlled and third-party channels, and continuing concealment through 2024. ROA.62, 67–69 paragraphs 23–34. Those allegations required analysis, and any missing identification of a covered duty was a curable pleading detail—not a basis for appellate futility without notice.

Section 1962(d) targets agreement. A conspirator need not personally commit two predicates if the agreed endeavor, when completed, would satisfy RICO. *Salinas v. United States, 522 U.S. 52, 63–66 (1997)*. Yan alleged instructions, structured transfers, an attorney-controlled account, and concealment. ROA.62, 67. Those allegations required separate analysis if any predicate was plausible.

IV. The continuity ruling overlooks EnvTech and draws an adverse inference not compelled by the complaint.

Page 4 recognizes that the alleged laundering began in 2018, preceded the divorce, and was independent of the challenged family-court order. Page 6 nevertheless assigns the entire pattern one objective connected to the marriage's dissolution. The complaint alleged a different sequence: business cash moved through grouped bank deposits and four Western Union transfers to China before the divorce, followed by an attorney-controlled account, cash payments to counsel, and third-party channels through 2024. ROA.62, 66–69 paragraphs 27–34. The bank

allegations identified periods, approximate counts, aggregate amounts, actors, and channels even where exact dates were not alleged. The divorce was alleged to expand the available cash channels, not to create a new objective or end the preexisting practice. At Rule 12, those allegations and reasonable inferences from them control.

*EnvTech*, decided after briefing but before this opinion, supplies the controlling published framework. It does not dictate the ultimate result because it involved multiple victims and different conduct. But it does compel a fact-intensive inquiry into whether recurring predicates are alleged as a regular way of conducting an ongoing business or as a repeatable modus operandi, and it precludes drawing the competing continuity inference against the pleader at Rule 12. 178 F.4th at 227–31. The panel therefore had to test the pleaded recurring business practice and threatened repetition rather than infer that the divorce supplied the objective for transfers alleged years earlier. Neither *D&T Partners* nor *Burzynski* makes one victim dispositive; both addressed finite schemes whose objectives or underlying litigation had ended. 98 F.4th 198, 211–14 (5th Cir. 2024); 989 F.2d 733, 743 (5th Cir. 1993). *EnvTech*'s posture also marks the procedural boundary: it exercised discretion to reach continuity because the issue had been presented to the trial court. 178 F.4th at 227. Here, no Panopyra Defendant presented the panel's four grounds below or on appeal.

The four Western Union transfers were not background facts. They were alleged pre-divorce predicate acts, followed by more than thirty additional transactions, multiple participants, an attorney-controlled account, and other accounts through 2024. ROA.62, 66–69. That sequence supports a recurring cash-concealment method migrating into added channels. Filing for divorce did not necessarily terminate the alleged business practice or retroactively assign a divorce objective to earlier transfers. The opinion should be amended to apply *EnvTech* and credit the alleged threat of repetition.

V. The opinion substituted an abstract description for *Armadillo*'s claim-by-claim transactional analysis.

Barrows invoked *Armadillo* for herself; Pigg separately compared the suits and argued duplication. Barrows Br. 10, 15–19; Pigg Br. 2–8. The panel therefore could identify the governing legal framework. But it resolved both appellees in one sentence: each suit concerned "the entry of a temporary order in a divorce proceeding." Op. 3. That abstraction neither identifies the same order nor establishes the same transaction. Claim splitting required a separate comparison of Yan's claim against each appellee with the corresponding claim in *Yan I*.

*Armadillo* requires comparison of operative transactions—their time, space, origin, motivation, convenient trial unit, and the parties' expectations. 84 F.4th at 628–31. That comparison would show different claims. *Yan I*'s federal claims

concerned April–May 2022 QDROs and ERISA disbursement; this action concerns a different June 21 instrument—its alleged fabrication, concealment, nonservice, and use for home exclusion and wage garnishment. ROA.62–63, 71–73; ROA.24-10543.1046–57, 1105–09. Yan preserved that distinction and alleged full awareness only in March 2024. ROA.62, 530–31; Opening Br. 38–40. The opinion did not separately compare the claims against Barrows, separately compare the claims against Pigg, address concealment, or explain how distinct instruments, injuries, and proof formed one convenient trial unit. A shared divorce setting does not, without that analysis, establish the same claim.

## CONCLUSION

The panel should grant rehearing, withdraw or amend the opinion, vacate the judgment as to DeAngelis, Barrows, Pigg, and the Panopyra Defendants, and remand for claim-specific proceedings. As to DeAngelis, the panel should withdraw the expanded Article III rule and decide adversity from the pleaded personal-capacity claim rather than disputed recitals or an immunity characterization. As to Barrows and Pigg, the panel should withdraw the claim-splitting affirmance and remand for claim-specific application of *Armadillo*. At minimum, the panel should withdraw the alternative-ground and futility rulings as to the Panopyra Defendants and remand those questions for first-instance consideration after notice and an opportunity to

amend. If any federal claim is reinstated, the supplemental-jurisdiction disposition of the related state-law claims should be vacated.

If the panel declines rehearing and retains these materially new applications, it should publish the opinion under Fifth Circuit Rule 47.5.1. Publication would make the asserted rule visible and reviewable where the decision applies published law to materially different circumstances, addresses asserted conflicts, and affirms on grounds different from those adopted below.

Respectfully submitted,

/s/ Conghua Yan

Conghua Yan, Pro Se Appellant

2140 E Southlake Blvd, Suite L-439, Southlake, Texas 76092 | 214-228-1886 |

arnold200@gmail.com

CERTIFICATE OF SERVICE

I certify that on August 24, 2026, I served this Petition for Panel Rehearing on all counsel and unrepresented parties in accordance with Fed. R. App. P. 25.

/s/ Conghua Yan

<u>CERTIFICATE OF COMPLIANCE</u>

This petition complies with Fed. R. App. P. 40(d)(3)(A) because it contains 3,889 words, excluding the parts exempted by Fed. R. App. P. 32(f), according to the word-count function used to prepare the petition.

This petition complies with Fed. R. App. P. 32(a)(4)-(6): the principal text is double-spaced, all four margins are at least one inch, and the petition uses a proportionally spaced 14-point serif typeface.

/s/ Conghua Yan

# United States Court of Appeals for the Fifth Circuit

No. 25-10752
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
August 20, 2026
Lyle W. Cayce
Clerk

CONGHUA YAN,

*Plaintiff—Appellant*,

*versus*

THE STATE OF TEXAS; LESLIE STARR BARROWS, *in Individual Capacity*; WILLIAM ALBERT PIGG, *in Individual Capacity*; LORI L. DEANGELIS, *in Individual Capacity and Official Capacity as Associated Judge*; PANOPYRA P.L.L.C., *A Private Company*; FUYAN WANG, *in Individual Capacity*; JIAYIN ZHENG, *in Individual Capacity*; YUANLI TANG, *in Individual Capacity*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CV-579

Before RICHMAN, SOUTHWICK, and WILLETT, *Circuit Judges*.

PER CURIAM:[*]

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

Conghua Yan, proceeding pro se, appeals the dismissal of his federal lawsuit arising from his divorce proceedings. Alleging a far-reaching conspiracy against him, Yan sued his attorney, his ex-wife's attorney, the family-court judge, the State of Texas, and his ex-wife's massage-therapy business and two of her business associates. He sought damages under 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations Act (RICO), and state law, along with declaratory and injunctive relief. The magistrate judge recommended dismissing all claims without leave to amend, and the district court adopted that recommendation over Yan's objections. We AFFIRM.

## I. Yan lacks standing to Sue Judge DeAngelis

Yan first contends that the district court erred in dismissing his claims against Judge Lori DeAngelis for lack of standing. We disagree. Article III confines federal jurisdiction to cases or controversies. U.S. CONST. art. III, § 2; *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). There is no case or controversy between a litigant and a judge acting in an adjudicatory capacity. *Reule v. Jackson*, 114 F.4th 360, 365–66 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1431 (2025); *see also Bauer v. Texas*, 341 F.3d 352, 359–61 (5th Cir. 2003); *Machetta v. Moren*, 726 F. App'x 219, 220 (5th Cir. 2018) (per curiam).

That principle resolved Yan's claims against Judge DeAngelis. She presided over part of Yan's divorce proceedings and entered the temporary order at the heart of this suit. The order bears Yan's signature and followed a hearing at which he personally appeared. Although Yan now disputes the authenticity of that signature, the order itself—referenced in and central to his complaint—confirms that Judge DeAngelis was acting in an adjudicatory

capacity. Yan therefore lacks standing to sue her. Accordingly, we AFFIRM the dismissal of all claims against Judge DeAngelis.[1]

## II. The Claims Against Barrows and Pigg Are Duplicative

Yan next challenges the dismissal of his § 1983 and RICO claims against his ex-wife's attorney, Leslie Starr Barrows, and his former attorney, William Albert Pigg. The magistrate judge relied on res judicata and also concluded that these claims duplicate an earlier suit. *Yan v. State Bar of Texas* (*Yan I*), No. 24-10543, 2025 WL 2759560 (5th Cir. Sept. 29, 2025) (per curiam). Res judicata does not support affirmance on this record, but we agree that the claims are duplicative.[2]

The rule against claim-splitting litigation "prohibits a party or parties in privity from simultaneously prosecuting multiple suits involving the same subject matter against the same defendants." *Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 628–30 (5th Cir. 2023) (internal quotation marks and citation omitted). Barrows and Pigg were defendants in *Yan I*.[3] The two suits also arise from the same nucleus of operative facts: the entry of a temporary order in a divorce proceeding that was allegedly procured through fraud and to Yan's financial detriment. The district court therefore did not abuse its

---

[1] Because there is no jurisdiction, we do not address the merits of judicial immunity. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 98 (1998).

[2] At the time the district court entered judgment here, *Yan I* was pending on appeal. We later dismissed that appeal for lack of appellate jurisdiction and remanded for further proceedings. A judgment is final for res judicata purposes only when "the district court properly entered final judgment, and that judgment never was modified on appeal." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 468 (5th Cir. 2013). *Yan I* therefore does not satisfy the finality requirement.

[3] *Yan I* also named Judge DeAngelis, the bank that disbursed funds pursuant to Judge DeAngelis's temporary order, the State Bar of Texas, and attorneys from the bar's Office of Chief Disciplinary Counsel.

discretion in dismissing the claims against Barrows and Pigg as duplicative. We AFFIRM that dismissal.

### III. The Panopyra Defendants' RICO Claims

Yan also challenges the dismissal of his RICO claims against his ex-wife, Fuyan Wang, her massage-therapy business, Panopyra PLLC, and two of her business associates, Yuanli Tang and Jiayin Zheng (collectively, Panopyra Defendants). The magistrate judge recommended dismissal as duplicative and under *Younger* abstention.[4] Dismissal is nonetheless proper but for a more straightforward reason: Yan failed to plead a plausible RICO claim. *See Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) ("We . . . may affirm on any basis supported by the record.").

To state a viable civil RICO claim, a plaintiff must plead a violation of the criminal RICO statute and a resulting injury to business or property. *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 338 (5th Cir. 2021). A violation of 18 U.S.C. § 1962 contains "three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198, 204–05 (5th Cir. 2024) (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)). The pattern element requires "at least two predicate acts of racketeering

---

[4] Neither ground supports affirmance. The Panopyra Defendants were not parties to *Yan I* and the record does not otherwise establish privity. *See Armadillo*, 84 F.4th at 630–31. Nor does *Younger* provide a basis for affirmance. Yan's RICO claim is not, at bottom, a challenge to the validity of the family-court order. It is an independent claim that the Panopyra Defendants laundered cash beginning in 2018—*before* the 2021 divorce proceedings. The claim does not ask a federal court to invalidate, enjoin, or otherwise interfere with a state-court order, and we are not persuaded that a private civil-damages claim of this sort falls within the three "exceptional circumstances" to which *Younger* narrowly applies. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) ("We have not applied *Younger* outside these three 'exceptional' categories[.]").

activity." *Crowe v. Henry*, 115 F.3d 294, 297 (5th Cir. 1997). Yan identifies wire fraud and money laundering as predicate acts.[5] His wire-fraud allegations must also satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

Yan's allegations fall short. His complaint alleges, largely in conclusory terms, that the Panopyra Defendants laundered cash and structured deposits to evade reporting requirements, using overseas wire transfers to carry out their racketeering enterprise. But as to wire fraud, Yan does not identify a scheme to defraud or plead the use of interstate or foreign wires in furtherance of one. *See* 18 U.S.C. § 1343 (wire fraud requirements). As to money laundering, Yan does not identify the "specified unlawful activity" that generated the alleged proceeds or plead facts showing that any defendant knew the property represented proceeds of unlawful activity. *See* 18 U.S.C. §§ 1956(a)(1), (c)(7) (money-laundering requirements).

The complaint independently fails to plead the continuity required for a pattern of racketeering activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–43 (1989). Continuity requires facts showing either "a closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241–42. Yan alleges neither. The supposed scheme centers on one victim—Yan—and one objective connected

[5] Yan also alleges perjury and financial structuring as predicate acts. Perjury is not a RICO predicate. *See* 18 U.S.C. § 1961(1) (listing the predicate offenses). Financial structuring can qualify as a predicate act, *id.* § 1961(1)(E) (including acts indictable under the Currency and Foreign Transactions Reporting Act), but it nonetheless "sound[s] in fraud" for pleading purposes because its gravamen is the deliberate breaking up of transactions to deceive a financial institution. *See Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368–69 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not.").

to the dissolution of his marriage. He alleges no facts suggesting an indefinite threat of repetition. And we have repeatedly treated finite schemes aimed at a limited set of victims and a singular objective as insufficient to establish closed-ended continuity, even when the alleged conduct spans years. *E.g.*, *D&T Partners*, 98 F.4th at 206–08; *In re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993).

Because Yan has not pleaded a plausible RICO violation, we AFFIRM the dismissal of his claims against the Panopyra Defendants.

## IV. Sovereign Immunity Bars the Claims Against Texas

Yan correctly concedes in his reply brief that his claims for declaratory and injunctive relief against Texas are barred by sovereign immunity. Texas has not waived its Eleventh Amendment immunity. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004); *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998). Nor does the *Ex parte Young* exception permit suit against the State itself. *See Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015). We therefore AFFIRM the dismissal of Yan's claims against Texas.

## V. Supplemental Jurisdiction Was Properly Declined

Yan next argues that the district court erred by dismissing his remaining state-law claims. We disagree. A district court "may decline" to exercise supplemental jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). We review that decision for abuse of discretion. *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016). That discretion in deciding whether to retain jurisdiction over state-law claims is "wide" and "not lightly disturb[ed]" on appeal. *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993) (per curiam). Once the district court properly dismissed all of Yan's federal claims, declining to

retain jurisdiction over the remaining state-law claims was well within that discretion.

## VI. Further Amendment Would be Futile

Finally, Yan argues that the district court abused its discretion by dismissing his claims without granting leave to amend. Rule 15 favors liberal amendment. Fed. R. Civ. P. 15(a)(2). But a court does not abuse its discretion in denying leave where amendment would be futile, *Avatar Expl., Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320–21 (5th Cir. 1991), particularly where the plaintiff does not identify additional facts that would cure the defect, *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017). Yan has already filed multiple iterations of his complaint across two federal lawsuits arising from the same divorce proceeding. Neither below nor on appeal has he identified additional facts that another amendment would add, much less facts that would cure the defects. On this record, denying further leave to amend as futile was not an abuse of discretion.

## VII. Conclusion

The judgment of the district court is AFFIRMED.